Ibrahim **KRAYEM**, Appellant,

v.

**USRP (PAC), L.P. and MacArthur Fuel Center, Inc., Appellees.**

No. 05–05–00212–CV.

Court of Appeals of Texas, Dallas.

May 25, 2006.

Rehearing Overruled June 30, 2006.

John M. Gillis, Dallas, for Appellant.

Richard M. Dooley, Dooley & Associates, James R. Jordan, Shannon, Gracey, Ratliff & Miller L.L.P., Dallas, for Appellee.

Before Justices MORRIS, MOSELEY and FITZGERALD.

## OPINION

Opinion by Justice MORRIS.

After Ibrahim Krayem unsuccessfully attempted to exercise a purchase option contained in his lease agreement, he sued USRP (PAC), L.P. and MacArthur Fuel Center, Inc. for breach of contract and a declaration that he timely and properly exercised his purchase option. The trial court, sitting without a jury, rendered a take-nothing judgment on Krayem's claims. Krayem now challenges the trial court's findings and conclusions that he did not effectively exercise his option, he did not fulfill the conditions precedent necessary to exercise and close the option, and his option terminated when the underlying lease was terminated. For the reasons that follow, we affirm the trial court's judgment.

### I.

In April 2003, Krayem executed a lease with USRP for a gas station in Irving, Texas. The lease gave Krayem the option to purchase the premises upon specified terms. Krayem paid USRP $9,187.50 for the purchase option. Less than two months later, however, USRP sold the premises to MacArthur. In conjunction with its purchase, MacArthur assumed all

obligations under the Krayem lease. USRP also placed $24,779.50 in escrow to be released to it unless Krayem exercised his option and purchased the property before October 18, 2003.

MacArthur sent Krayem a letter notifying him of the change in ownership and requesting new insurance certificates listing MacArthur as the certificate holder. Krayem then sent MacArthur a letter dated July 16, 2003 stating he was exercising his option to purchase the premises and scheduling a closing on or before October 31, 2003. Krayem did not sign the July 16 letter. In August, MacArthur sent Krayem a letter terminating his lease for failure to comply with the lease's insurance requirements. MacArthur later filed a forcible detainer action against Krayem and was granted possession of the premises on October 6, 2003.

Krayem sued USRP and MacArthur alleging that, although he properly exercised his option, appellees refused to sell him the property. USRP filed a counterclaim against Krayem and a cross-claim against MacArthur seeking the $24,779.50 held in escrow. After a trial without a jury, the trial court rendered judgment against Krayem on his affirmative claims and in favor of USRP on its claims for the escrowed funds. Krayem appeals.

## II.

In issues one, two, and five, Krayem attacks the legal and factual sufficiency of the trial court's findings and conclusions that he did not properly exercise his option to purchase the premises. Specifically, Krayem argues his June 16 letter to MacArthur conclusively establishes that he effectively exercised his option to purchase the premises. MacArthur, on the other hand, contends that because the June 16 letter was unsigned, it was not an effective

exercise of the purchase option as required by section 2.5 of the lease.

We review the trial court's fact findings for legal and factual sufficiency under the same standards as jury findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). In contrast, we evaluate the trial court's legal conclusions de novo to determine whether they are correct. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). We will reverse erroneous conclusions of law only if the evidence does not support any legal theory on which the judgment can be based. *Id.*

Section 2.5 of the lease requires the purchase option be exercised by "written irrevocable notice" delivered to the landlord. The term "written irrevocable notice," however, is not defined in the lease. MacArthur contends the Texas statute of frauds and case law support its position that "written irrevocable notice" necessarily means a written instrument signed or executed by the party to be charged. We first note that MacArthur's argument necessarily fails because Krayem is not the party against whom enforcement is sought for statute of fraud purposes. Moreover, none of the cases cited by MacArthur support its position that "written irrevocable notice" required Krayem to sign his letter. *See Hitchcock Properties, Inc., v. Levering,* 776 S.W.2d 236 (Tex.App.-Houston [1st Dist.] 1989, writ denied) (option contracts are contracts involving the sale of real estate and as such are subject to the statute of frauds); *Joiner v. Elrod,* 716 S.W.2d 606 (Tex.App.-Corpus Christi 1986, no writ) (oral contract for land modifying written contract that was later signed by party against whom enforcement was sought sufficient to satisfy statute of frauds); *Petty v. Wilkins,* 190 S.W. 531 (Tex.App.-Texarkana 1916, writ ref'd) (acceptance of option

contract must be in writing); *Ex parte Felton*, 590 S.W.2d 471 (Tex.Crim.App. 1979) (en banc) (term "in writing" located in article 1.13 of the Texas Code of Criminal Procedure means defendant must sign printed jury waiver form), *overruled by Ex parte Sadberry*, 864 S.W.2d 541 (Tex.Crim. App.1993).

Absent any lease provision or legal authority requiring Krayem to sign the written notice, we conclude Krayem's unsigned June 16 letter conclusively established he gave proper "written irrevocable notice" of his intent to exercise his purchase option. Thus, the trial court's findings and conclusions to the contrary were incorrect. To succeed on his claims, however, Krayem was required to do more than just properly exercise his purchase option. He was also required to perform all conditions precedent necessary to close the purchase.

■ In his third and fourth issues, Krayem attacks the trial court's findings and conclusions that he failed to perform all conditions precedent to effectively close the option.[1] In particular, Krayem asserts he was not required to tender consideration of the purchase price of the property or demand a deed from appellees to close the purchase because the record established that MacArthur refused to attend the scheduled closing or agree to a new closing date. Alternatively, he argues that his appearance for a closing on October 3, 2003 and attempts to reschedule the closing were sufficient tender of consideration.

■ One of the elements Krayem had to prove to support his breach of contract claim was that he performed or tendered performance under the contract. *See Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769 (Tex.App.-Dallas 2005, no pet.). In situations where the parties have mutually concurrent contract obligations, such that a deed is required to be delivered upon tender of the purchase price, tender serves two purposes: it invokes the seller's obligation to convey, and it establishes that the buyer is ready, willing, and able to perform all material acts which the contract requires of him. *See Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 79 (Tex.App.-Austin 2003, no pet.). Tender is not a prerequisite, however, when its performance was prevented by the other party or where defendant repudiates the contract. *See 17090 Parkway, Ltd. v. McDavid*, 80 S.W.3d 252, 256 (Tex.App.-Dallas 2002, pet. denied); *Roundville Partners*, 118 S.W.3d at 79. We must therefore examine the record to determine if Krayem's acts in connection with the closing constitute tender of performance or whether such tender was excused.

Krayem testified that he executed a written contract to sell the premises to a third party, Fahd Enterprises, Inc. Krayem and Jamal Aly, a principal in Fahd Enterprises, then presented the transaction to a title company in an attempt to close their transaction simultaneously with the closing of Krayem's purchase option. Krayem further testified the title company prepared and he signed documents in connection with the closing. The transaction, however, did not close because they were unable to get MacArthur to attend the closing. Aly testified that he took a copy of the sales contract and bank loan commitments to the title company. He expected MacArthur to transfer the property to Krayem and then he would purchase the property as stated in the contract. Aly also indicated that, although he had a cashier's check for the downpayment and the loan commitment, he never tendered any

---

1. Krayem expands on these issues in a post-submission brief that we gave leave to file on this date.

money to the title company. Krayem never received any money from Fahd Enterprises. Thus, there was no evidence that Krayem could have completed the purchase transaction with MacArthur without first receiving funding from Fahd Enterprises.

Krayem also testified that after he appeared at the first scheduled closing date, the title company telephoned MacArthur's attorney. Although Krayem stated another closing date was scheduled, there was no evidence that MacArthur or its attorney ever received notice of the later date.

■ Based on the evidence before the trial court, we cannot conclude that Krayem tendered performance under the contract or that his tender was excused. Krayem's ability to close the purchase option was completely dependent upon an unrelated third-party transaction. That transaction, however, could not be completed until MacArthur transferred the property to Krayem. There is no indication that Krayem could tender the consideration needed to close the purchase until the third-party transaction closed. Likewise, there is nothing in the record to indicate that MacArthur prevented Krayem from performing or that it openly refused to perform its obligations under the contract. The evidence supports the trial court's determination that Krayem did not tender the consideration required to close the purchase. We resolve Krayem's third and fourth issues against him. Because the trial court's judgment is supportable on this basis, we need not address Krayem's remaining issue of whether termination of the underlying contract terminated his purchase option.

We affirm the trial court's judgment in all respects.