

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-443-CV

PACIWEST, INC.                                            APPELLANT AND
                                                         CROSS-APPELLEE

V.

WARNER ALAN PROPERTIES, LLC                              APPELLEES AND
AND WARNER ALAN/WESTCLIFF, LTD.                          CROSS-APPELLANTS

------------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

**Introduction**

This case involves competing motions for summary judgment in a suit over a failed real estate transaction. The trial court granted summary judgment for the purchaser, appellee Warner Alan/Westcliff, Ltd. (Westcliff), and appellee Warner Alan Properties, LLC (Warner Alan), Westcliff's predecessor-in-interest in the purchase and sale contract. It also ordered that Westcliff was entitled

to specific performance of the contract as a remedy for the seller's default. The seller, appellant Paciwest, Inc., brings three issues on appeal in which it contends that the trial court erred by sustaining appellees' objections to Paciwest's summary judgment proof, by denying Paciwest's motion for summary judgment and granting appellees', and by granting appellees' request for specific performance. In a single issue in a cross-appeal, appellees contend that the trial court erred by determining that they were precluded from recovering damages in addition to specific performance because of the election of remedies doctrine. We affirm in part and reverse and remand in part.

## Background Facts

On July 28, 2005, Paciwest and Warner Alan entered into a Purchase Agreement under which Paciwest would sell Warner Alan its interest in the Westcliff Manor Apartments in Fort Worth, Texas. The agreement provided that the purchase price for the property would be $5,780,000, payable as follows:

> (a) a portion of the Purchase Price shall be paid by [Warner Alan's] assuming (subject to any limitations on personal liability applicable thereto) the outstanding principal balance owing on the Closing Date (hereinafter defined) on that certain Promissory Note (the "Note") dated October 10, 2002, in the original principal amount of $4,000,000, executed by [Paciwest] . . . .

> (b) The balance of the Purchase Price shall be payable at the Closing (hereinafter defined) in immediately available funds.

2

"Closing" was defined as "9:00 a.m. on the date fifteen (15) days after written approval of [Warner Alan's] assumption of the Note by [the] Lender." The contract also provided that closing could be extended if the lender had not timely sent the title company the signed documents required to evidence the lender's approval of the loan assumption.

Shortly after the parties executed the contract, Ted Broadfoot and Chris Neill of Warner Alan began discussing with Dziem "Jim" Nguyen of Paciwest the possibility that Warner Alan would seek third party financing rather than assume Paciwest's note. On August 6, 2005, Nguyen sent Warner Alan a letter to Neill's attention in which he stated the following:

> I am writing you this letter just want to recap my conversation with you and Ted regarding financing of the sale:
>
> 1)      You will run the number[s] and look into the alternative of paying off the existing note *including defeasance or yield maintenance* by financing with another third party; and you will decide which way this coming week and will send in the 2 assumption fees check of $3,000 each to [the lender] then *if assumption is still the choice*.
>
> 2)      To accommodate that, I will prepare the assumption paper to send to [the lender] but will not send in until Wednesday or next Thursday morning. . . .
>
> . . . .
> 4)      *If you choose to assume the note*, Parking [repairs] will have to be done prior to the assumption's approval. Then, let me know to what extent you want that done and we will need an

3

addendum to do the repair and increase the contract price. [Emphasis added.]

On August 17, 2005, Neill faxed Nguyen a letter stating, "Please allow this to serve as notice that we will not be assuming the current . . . loan which is in place for Westcliff Manor. We will be placing new debt on this property through La Jolla Bank." Subsequently, on August 30, 2005, Nguyen sent a letter to Paciwest's lender, stating, "Please accept this letter as our intent to pay off Loan 01-0207891 within thirty (30) days (by September 30, 2005). At this time we are requesting payoff information be faxed to (972) 613-[illegible.]."

Nguyen faxed Broadfoot a proposed First Amendment to the contract on August 31, 2005. The amendment included the following terms: (1) Warner Alan would pay, in addition to the purchase price, "all the fees in connection with paying off the existing note early, including but not limited to the pre-payment yield maintenance," (2) Warner Alan's inspection period would end at 5 p.m. on September 7, 2005, and (3) closing would take place on or before September 30, 2005, with the option to extend for an additional fifteen days upon Warner Alan's depositing an additional, nonrefundable earnest money of $10,000. It also included a representation that neither party had defaulted under the contract up to that time and a statement that "[a]ll of [Paciwest's]

4

warranty and indemnification to [Warner Alan] in the [a]greement with respect to the existing Loan documents now becomes null and void."

The next correspondence between the parties occurred on September 5, 2005, when Neill faxed a letter to Nguyen asking for a price reduction of $300,000. In the letter, Neill stated that "the appraiser has indicated that the value is much lower than expected and there is a lot of deferred maintenance outside of our original rehab scope." Additionally, he noted that "[t]he occupancy on the property has declined as has the economic collection" and that the "sizeable drop in collections is greatly impacting the value of the property." Neill goes on to state that

> [a]ll of these items are causing our lender to lower the amount they are willing to finance[.] While I fully admit that the property is a nice property in a good area[,] I also have to realistically point out that on paper the property is worth significantly less than 5[.]8 million and is in fact worth 2.8 million at an 8 percent capitalization rate[.] We are willing to purchase a sizeable portion of the upside, but simply cannot put 2[.]5 million in cash in this deal[.] The unfortunate reality is that we are at a point where we can move forward and try to increase funding but the chances of that are slim[.] We want to do the deal but are at the 23rd hour and are running out of options and need some help from you.

Nguyen was angry when he received this letter and decided not to go forward with the transaction under any terms other than those in the original contract; in other words, Paciwest would perform its obligations under the contract only if Warner Alan was still able to assume Paciwest's note.

5

The next day, September 6, 2005, Broadfoot faxed Nguyen a letter with changes to the proposed First Amendment. In the cover letter, he noted that the lender had

> indicated that part of prepaying the notes is paying the accrued interest expense which is a full month regardless of prepay date. We do not want to double pay interest and therefore would not want to close anytime other than month end. Currently, our lender believes they will be ready for September 30th, but in case they are not, we would want to extend for 30 days instead of 15.

The only changes marked on the amendment are the addition "to the best of their knowledge" to the end of the provision in which each party was to acknowledge that there had been no breach or default of the contract, the deletion of the provision that Paciwest's representations and warranties in the agreement about the existing loan documents are null and void, and the change from fifteen to thirty days on the extension date. According to Neill, Warner Alan did not think an amendment to the contract was necessary, but they "were trying to be accommodating."

Nguyen sent another letter on September 9, 2005, in which he stated that Paciwest could not approve either the price reduction requested by Warner Alan, nor the requested modifications to the amendment. Thus, Nguyen said, "the contract stands unchanged, as written." On September 20, 2005, Warner Alan's attorneys sent a letter to Paciwest by fax and certified mail indicating

6

that Warner Alan was "ready, willing and able to close this transaction on September 30, 2005" and that Westcliff,[1]

> the affiliate of [Warner Alan] to which the Contract will be assigned, will be present at the September 30 closing and will tender full performance of all its obligations under the Contract, including but not limited to full payment of the Purchase Price. The Note will be fully discharged out of the sale proceeds and any prepayment penalty will be paid by the purchaser. Therefore the net amount received by [Paciwest] will be the same as the net amount it would have received had the Note been assumed.

On September 28, 2005, Paciwest's attorney sent Warner Alan a letter indicating that the contract had automatically terminated by its own terms as of September 26, 2005 because Warner Alan had failed to obtain lender approval to assume Paciwest's loan. Neill and Broadfoot both attended the scheduled closing. Warner Alan wired $5,621,031.91 to the title company, representing the purchase price, less the initial escrow deposit of $35,000, rent and tax prorations, and a credit for security deposits held by Paciwest. Warner Alan also wired an additional $250,000 and had additional funds available if more money was needed. However, Paciwest did not attend and refused to close the transaction.

---

[1] Warner Alan assigned its rights and duties as purchaser under the contract to Westcliff sometime in September 2005. The assignment document does not show the exact date the assignment occurred.

7

Appellees sued Paciwest on October 3, 2005, seeking specific performance of the contract and a declaratory judgment that (1) the contract did not terminate on September 26, 2005 or at any other time, (2) appellees are not in breach of the contract, (3) Westcliff can fulfill its obligations under the contract in an all-cash transaction as opposed to assuming the loan, (4) Paciwest breached and repudiated the contract by refusing to close and treating the contract as terminated, and (5) the September 30 closing date was in compliance with the contract terms. They also sought attorneys' fees. Paciwest timely filed an answer. Appellees amended their petition in March, October, and November 2006 to include claims for damages for (1) "the difference in interest rates and interest payments caused by [Paciwest's] failure to transfer the [p]roperty on September 30, 2005," (2) lost profits, management fees, and fair rental value of the property since September 30, 2005, and (3) damages for increases in the cost of repair and improvement projects and the financing of such projects. They also included an alternative prayer for relief for damages only.

Appellees filed a traditional motion for partial summary judgment on the liability and specific performance issues, reserving the damages issues for trial. Paciwest responded and also filed a competing traditional motion for summary

8

judgment that would dispose of all of appellees' claims. The trial court granted

appellees' motion, denied Paciwest's, and ordered the following:

> [It is] ORDERED, ADJUDGED, DECREED AND DECLARED that Warner Alan Properties, LLC has the right to pay a portion of the purchase price by paying off Paciwest's loan instead of assuming it; and it is further

> ORDERED, ADJUDGED, DECREED AND DECLARED that [Paciwest] breached the contract by failing to convey the Westcliff Manor Apartments . . . on September 30, 2005; and it is further

> ORDERED, ADJUDGED, DECREED AND DECLARED that the Court GRANTS Warner Alan/Westcliff, Ltd. specific performance and ORDERS [Paciwest] to perform the contract and convey the Westcliff Manor Apartments . . . to Warner Alan/Westcliff, Ltd.; and it is further

> ORDERED, ADJUDGED, DECREED AND DECLARED that the only remaining issues to be determined at trial are the amount of [appellees'] damages caused by Paciwest's failure to convey the Westcliff Manor Apartments on September 30, 2005, and the amount of [appellees'] reasonable and necessary attorneys' fees and expenses.

Thus, after the trial court granted appellees' motion, the only issues remaining

for trial were whether appellees were entitled to damages as well as specific

performance of the contract.

Paciwest subsequently objected to appellees' damages expert and

additionally argued that the contract did not provide for the remedy of damages

as well as specific performance but rather that the two are mutually exclusive

remedies under the contract. The trial court agreed, leaving attorneys' fees as

9

the only issue to be decided. The parties then entered into a stipulation on attorneys' fees.

The trial court entered a final judgment incorporating all of its rulings and the parties' stipulation on attorneys' fees on September 28, 2007. Appellees filed a notice of appeal on December 13, 2007, and Paciwest filed a notice of appeal on December 21, 2007. The parties later filed an agreed motion to realign the parties, which this court granted, making Paciwest the appellant and cross-appellee and Warner Alan and Westcliff appellees and cross-appellants.

## Issues Presented

In three issues, Paciwest contends that the trial court erred by sustaining appellees' objections to its summary judgment proof, by granting appellees' motion for partial summary judgment and denying Paciwest's motion for summary judgment, and by granting appellees' request for specific performance. In their cross-appeal, appellees contend that the trial court erred by refusing to allow them to recover incidental damages to compensate for Paciwest's delay in conveying the property.

## Objections to Summary Judgment Evidence

Appellees objected to several statements in Nguyen's affidavit offered by Paciwest as summary judgment evidence; the trial court sustained some but not all of these objections. Specifically, Paciwest complains about the trial court's

10

sustaining appellees' objections to the following statements: "There was never an agreement reached between the parties concerning an amendment to the Contract," and "It was Paciwest's understanding, which was in accordance with the express terms of the contract, that if an amendment or modification was not agreed to in writing that the amendment or modification was not finalized, nor enforceable."

We review a trial court's ruling sustaining or overruling objections to summary judgment evidence for an abuse of discretion. *Garner v. Fidelity Bank, N.A.*, 244 S.W.3d 855, 859 (Tex. App.—Dallas 2008, no pet.); *Bd. of Trustees of Fire and Police Retiree Health Fund v. Towers, Perrin, Forster & Crosby, Inc.*, 191 S.W.3d 185, 192–93 (Tex. App.—San Antonio 2005, pet. denied); *see Reynolds v. Murphy*, 188 S.W.3d 252, 259–61 (Tex. App.—Fort Worth 2006, pet. denied), *cert. denied*, 127 S. Ct. 1839 (2007). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar

11

circumstance does not demonstrate that an abuse of discretion has occurred. *Id*.

Appellees objected to Nguyen's statement that the parties never agreed on an amendment to the contract as being a "legal conclusion." The trial court agreed. Paciwest contends that the trial court abused its discretion by sustaining this objection because it did not sustain its similar objection to a statement in Broadfoot's affidavit that "[i]n a subsequent conversation, Mr. Nguyen and I agreed that the closing would take place on September 30, 2005," or a statement by Neill in his affidavit that "Warner Alan and Paciwest orally agreed that Warner Alan could pay-off Paciwest's Note instead of assuming it." According to Paciwest, appellees opened the door to Nguyen's statement by introducing similar testimony by Neill and Broadfoot. Also, they contend that by sustaining appellees' objection but denying Paciwest's, the trial court prevented Paciwest from presenting conflicting evidence on the matter.

We conclude and hold that the trial court did not abuse its discretion by sustaining appellees' objection to Nguyen's statement as a legal conclusion. Neither Neill's nor Broadfoot's statements attempt to broadly conclude that an amendment to the contract was or was not reached; they simply address the underlying facts of what terms were specifically agreed upon. In contrast, Nguyen's statement opines that no legally binding amendment was reached.

12

This is more in the nature of a legal conclusion than a statement of fact. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Souder v. Cannon*, 235 S.W.3d 841, 849 (Tex. App.—Fort Worth 2007, no pet.).

Moreover, we also conclude and hold that the trial court did not abuse its discretion by sustaining appellees' objection to Nguyen's statement that Paciwest's understanding was that if an amendment or modification was not in writing, it was not enforceable, and that Paciwest's understanding was in accordance with the terms of the contract. To begin with, the part of the statement indicating that Paciwest's understanding is in accordance with the contract terms is an impermissible legal conclusion. *See Brownlee*, 665 S.W.2d at 112; *Souder*, 235 S.W.3d at 849. Moreover, as Paciwest pointed out in its objection to the evidence, Paciwest's subjective intent is irrelevant to the issue of whether the parties agreed to change the contract terms. A determination of whether a meeting of the minds has occurred is based on an objective standard; thus, evidence of Nguyen's subjective belief about what the contract says or about whether an amendment occurred is not relevant to whether there was a meeting of the minds sufficient to amend the contract. *See Cox v. S. Garrett, L.L.C.*, 245 S.W.3d 574, 579 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied).

13

We overrule Paciwest's third issue.

**Competing Motions for Summary Judgment**

In its first issue, Paciwest challenges the summary judgment for appellees, contending that Westcliff is not entitled to specific performance because (1) the statute of frauds and section 9.4 of the contract prohibit enforcement of the contract under the terms proposed by appellee, (2) the trial court disregarded the contract's automatic termination provision and imposed additional obligations on the parties that were not included in the original contract, (3) Warner Alan did not have the unilateral right to change the contract's payment method from assumption to an all-cash transaction, (4) compliance with the contract by Warner Alan was still possible once it received notification from Paciwest that the contract would not be amended as requested, (5) specific performance is unavailable to Warner Alan because it has unclean hands, (6) specific performance is unavailable to Warner Alan because it did not establish that it properly tendered performance, and (7) the original contract is neither valid nor enforceable because it is not supported by consideration and lacks mutuality of obligation.

**1.    Standard of Review**

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both

14

parties' summary judgment evidence and determine all questions presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The reviewing court should render the judgment that the trial court should have rendered. *Id.*

A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *see* Tex. R. Civ. P. 166a(b), (c).

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Mason*, 143 S.W.3d at 798. Questions of law are appropriate matters for summary judgment. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Westchester Fire Ins. Co. v. Admiral Ins. Co.*, 152 S.W.3d 172, 178 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g).

15

**2.    Analysis**

**a.    Appellees' Evidence of Amendment to Contract**

Paciwest's first four arguments rest on the assumption that there is no evidence showing the parties amended the contract to allow appellees to obtain third party financing instead of assuming Paciwest's loan.

The statute of frauds requires a real estate contract to be in writing and signed by the person against whom it is to be charged. Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(4) (Vernon Supp. 2008); *Chambers v. Pruitt*, 241 S.W.3d 679, 687 (Tex. App.—Dallas 2007, no pet.). Section 9.4 of the contract provides that

> [n]either this Agreement nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument in writing signed by the party against which the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

The plain language of Nguyen's August 6, 2005 letter, which was signed by Nguyen and on Paciwest letterhead, indicates that Warner Alan could choose either to assume the loan or obtain third party financing (with payoff of defeasance or yield maintenance, in other words, any prepayment penalty);[2]

_____

[2] *See River E. Plaza, L.L.C. v. Variable Annuity Life Ins. Co.*, 498 F.3d 718, 719, 721 (7th Cir. 2007); George Lefcoe, *Yield Maintenance and Defeasance: Two Distinct Paths to Commercial Mortgage Prepayment*, 28 Real

16

Nguyen instructed that Warner Alan should pay the assumption fees if assumption was its choice. It is undisputed that Warner Alan did not pay the assumption fees. Thus, Nguyen's letter is an offer to Warner Alan to choose which option it wants. *See KW Constr. v. Stephens & Sons Concrete Contractors, Inc.*, 165 S.W.3d 874, 883 (Tex. App.—Texarkana 2005, pet. denied) ("To prove a valid offer, a party must show (1) the offeror intended to make an offer; (2) the terms of the offer were clear and definite; and (3) the offeror communicated the essential terms of the offer to the offeree.").

Warner Alan accepted that offer not only by failing to send in the assumption fees but also by sending a written letter to Paciwest on August 17, 2005 indicating that it would seek third party financing and it would not assume Paciwest's loan.[3] Thus, the parties agreed in writing that Warner Alan

Est. L.J. 202, 202–03 (2000).

[3] Paciwest contends that any agreement the parties did come to was indefinite because Warner Alan did not specifically agree in writing to pay the prepayment penalty. However, Warner Alan's letter indicating that it chose to seek third party financing did not indicate that it would not pay any prepayment penalty, nor did it attempt to change the terms of Nguyen's offer in any way. *Cf. Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465–466 (Tex. App.—Dallas 2006, pets. denied) ("An acceptance must be identical to the offer, or there is no binding contract."); *Harris v. Balderas*, 27 S.W.3d 71, 77 (Tex. App.—San Antonio 2000, pet. denied) ("If the purported acceptance contains terms that materially change the offer, the acceptance is actually a rejection and counter-offer."). Additionally, by failing to pay the assumption fees, Warner Alan indicated its acceptance of Nguyen's offer on the terms

would no longer be obligated to assume Paciwest's existing note. Once the parties agreed to change the financing terms, Paciwest could not unilaterally change them back to the terms in the original contract without evidence that Warner Alan subsequently agreed that the original terms of the contract would be effective. There is no such evidence in the summary judgment record.

In addition, Warner Alan's letters referencing a September 30 closing, along with Nguyen's August 30 letter to Paciwest's lender, show an agreement by the parties to close no later than September 30. *See EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 266 (Tex. App.—Corpus Christi 1994, writ denied). Moreover, a September 30 closing—two months after the effective date of the contract that originally called for lender approval of a loan assumption—would not have been unreasonable and, thus, could be implied. *See O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 244 (Tex. App.—San Antonio 1998, pet. denied).

Further, even if the writings between the parties are not sufficient to show an agreement by Paciwest to an all-cash transaction, provisions in an earnest money contract that provide for termination of a contract if the buyer

---

outlined in his letter, which include the payment of any prepayment penalty. *See United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 360, 364 (Tex. 1968) (holding that performance may be valid acceptance).

is unable to obtain financing are solely for the benefit of the buyer and may be waived by the buyer. *See R. Conrad Moore & Assocs., Inc. v. Lerma*, 946 S.W.2d 90, 94–95 (Tex. App.—El Paso 1997, writ denied); *Renouf v. Martini*, 577 S.W.2d 803, 803–04 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ). Thus, even a buyer who has not strictly complied with the financing terms in an earnest money contract, but who is nevertheless able to meet its obligations to close a transaction, may enforce specific performance against a seller who thereafter refuses to close the transaction on the ground that the buyer did not obtain the financing on the express terms provided for in the contract. *See Advance Components, Inc. v. Goodstein*, 608 S.W.2d 737, 739–40 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e); *cf*. *Potcinske v. McDonald Prop. Invs*., 245 S.W.3d 526, 530–31 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (distinguishing *Advance Components* and holding that analysis of materiality of financing provisions for purposes of contract enforcement differs from analysis for purposes of contract formation).

Here, a reading of the entire contract shows that the financing provision, although negotiated, was for Warner Alan's benefit and Warner Alan waived its rights involving assumption of Paciwest's loan. The August 17, 2005 letter indicating that Warner Alan chose to pay off the loan rather than assume it, the September 6, 2005 letter enclosing changes to the proposed amendment and

indicating that Warner Alan wanted the option to extend for thirty days to minimize interest payments, and the September 20, 2005 letter indicating that Warner Alan was ready to pay the purchase price and any prepayment penalty at closing all indicate Warner Alan's intention to waive the benefit of the assumption financing provisions, including the automatic termination provision.

Paciwest claims that the financing provisions in the contract could not be to appellees' benefit only because other provisions of the contract were dependent upon them and because an all-cash transaction would work a detriment to Paciwest in that it would not receive its tax and insurance reserves from the lender until up to seven days after closing, rather than at closing from the purchaser, as was contemplated between the parties in the contract. However, there is no evidence that the other provisions in the contract, such as the closing date, were tied to assumption for any particular reason other than to facilitate the closing date as quickly as possible, which purpose was not thwarted by the all-cash transaction. Additionally, Paciwest offered no evidence that a seven-day delay in receiving its escrow from the lender would have any material or detrimental effect on Paciwest. Accordingly, we conclude and hold that either (a) sufficient writings indicated an agreement to an all-cash transaction closing on or before September 30 or (b) Warner Alan was entitled

to waive the benefit of the financing provisions to its benefit and proceed with an all-cash transaction.

**b.    Whether Westcliff Is Entitled to Specific Performance**

Paciwest contends that Westcliff is not entitled to specific performance because Warner Alan's wrongful conduct in sending the price reduction letter is what caused the failure of the transaction and because Westcliff failed to tender performance, which Paciwest claims is a prerequisite to specific performance in this case, because Westcliff did not tender the correct purchase price at closing.

A contract is subject to specific performance if it contains the essential terms of a contract, expressed with such certainty and clarity that it may be understood without recourse to parol evidence. *Johnson v. Snell*, 504 S.W.2d 397, 398 (Tex. 1973); *Rus-Ann Dev., Inc. v. ECGC, Inc*., 222 S.W.3d 921, 927–28 (Tex. App.—Tyler 2007, no pet.) (holding that lack of closing date in option contract did not preclude enforcement by specific performance).  We have already determined that the summary judgment record shows that the original written contract was validly amended, in writing, to provide that Warner Alan could pay the purchase price via third party financing, rather than assumption of Paciwest's loan and that the parties would close within a reasonable time, no later than September 30, 2005.

Specific performance is an equitable remedy that may be awarded at the trial court's discretion upon a showing of breach of contract. *Kress v. Soules*, 152 Tex. 595, 261 S.W.2d 703, 704 (1953)*; Bell v. Rudd*, 144 Tex. 491, 191 S.W.2d 841, 843 (1946); *Stafford v. S. Vanity Magazine, Inc*., 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). Specific performance is not a separate cause of action, but rather it is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate. *Stafford*, 231 S.W.3d at 535; *Scott v. Sebree*, 986 S.W.2d 364, 368 (Tex. App.—Austin 1999, pet. denied).

### i. Unclean Hands

The doctrine of unclean hands operates as a bar to the equitable relief of specific performance. *Stafford*, 231 S.W.3d at 536 n.4; *Lazy M Ranch, Ltd. v. TXI Operations LP*, 978 S.W.2d 678, 683 (Tex. App.—Austin 1998, pet. denied). The party claiming unclean hands has the burden to show that it was injured by the other party's unlawful or inequitable conduct. *Stafford*, 231 S.W.3d at 536 n.4; *Willis v. Donnelly*, 118 S.W.3d 10, 38 (Tex. App.—Houston [14th Dist.] 2003), *aff'd in part and rev'd in part on other grounds*, 199 S.W.3d 262, 278–79 (Tex. 2006).

The evidence is disputed as to whether the price reduction letter contains intentional falsehoods; however, even if it does, Westcliff is not barred from

22

obtaining specific performance. The clean hands doctrine should not be applied unless the party asserting the doctrine has been seriously harmed and the wrong complained of cannot be corrected without the application of the doctrine. *Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex. App.—Fort Worth 2006, pet. denied). Here, the evidence shows that any harm suffered by Paciwest was its own doing; it had no obligation to lower the purchase price and it rejected Warner Alan's attempt to do so. Ultimately, by failing to terminate during the inspection period, Warner Alan obligated itself and Westcliff to the purchase price as set forth in the contract. However, by insisting that the contract had not been validly amended to allow Warner Alan to purchase the property through third party financing rather than assumption and by refusing to close unless the loan was assumed rather than paid off, Paciwest was responsible for its own default under the contract. Accordingly, we conclude and hold that the trial court did not abuse its discretion in determining that Westcliff was not barred from seeking specific performance by the "unclean hands" doctrine. *See Stafford*, 231 S.W.3d at 536 n.4; *Dunnagan*, 204 S.W.3d at 41.

23

### ii. Tender of Performance

Before a grantor or obligee may assert any rights under an escrow contract, it must show compliance with the conditions of the escrow — actual performance — or an offer to perform that was prevented through no fault of the grantor or obligee. *Bell*, 191 S.W.2d at 844; *Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 79 (Tex. App. — Austin 2003, pet. denied). In cases in which the seller's and buyer's contract obligations are mutual and dependent, in that a deed is required to be delivered upon tender of the purchase price, the purpose of a tender satisfies two purposes: first, it invokes the seller's obligation to convey and places him in default if he fails to do so; second, it satisfies the fundamental prerequisite of specific performance — that the buyer show that he has done or offered to do, or is then ready and willing to do, all the essential and material acts which the contract requires of him. *Krayem v. USRP (PAC), L.P.*, 194 S.W.3d 91, 94 (Tex. App. — Dallas 2006, pet. denied); *Roundville*, 118 S.W.3d at 79. An actual tender in strict compliance with the provisions of the contract, within the time allowed by the contract, is always required when a contract provides that time is of the essence unless it is shown that the defaulting party (1) prevented actual tender by the party attempting to perform or (2) when, as here, the defendant has repudiated the contract before the time for performance. *Krayem*, 194 S.W.3d at 94; *Roundville*, 118 S.W.3d

24

at 79–81.[4]  Upon either showing, a party seeking specific performance must only plead and prove that it is ready, willing, and able to perform its part of the contract according to its terms.  *Rus-Ann Dev., Inc.*, 222 S.W.3d at 927; *17090 Parkway, Ltd. v. McDavid*, 80 S.W.3d 252, 258 (Tex. App.—Dallas 2002, pet. denied).

Here, the summary judgment evidence shows that regardless of whether appellees actually tendered performance in strict compliance with the contract terms, such tender is excused because Paciwest clearly repudiated the contract by not only insisting that appellees continue the assumption process but also by sending the September 28, 2005 letter indicating that the contract was terminated.[5]  *See Jenkins v. Jenkins*, 991 S.W.2d 440, 447 (Tex. App.—Fort Worth 1999, pet. denied) (stating that repudiation "consists of words or actions by a contracting party that indicate he is not going to perform his contract in the future").  Appellees' pleadings indicate that they "remain ready, willing and

---

[4] *See also Rus-Ann Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 927 (Tex. App.—Tyler 2007, no pet.); *17090 Parkway, Ltd. v. McDavid*, 80 S.W.3d 252, 258 (Tex. App.—Dallas 2002, pet. denied); *Wilson v. Klein*, 715 S.W.2d 814, 822 (Tex. App.—Austin 1986, writ ref'd n.r.e.).

[5] This case is thus distinguishable from *Riley v. Powell*, in which this court held that actual tender was required when the seller decided not to close after reviewing closing documents drafted by the purchaser, a real estate broker who also represented the seller.  665 S.W.2d 578, 580–81 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.).

able to pay the purchase price, [and] any prepayment penalty, and will perform any other obligations they have." Moreover, they presented summary judgment evidence that they were ready, able, and willing to perform these obligations, including paying the entire prepayment penalty,[6] on September 30, 2005. Thus, we conclude and hold that the trial court did not abuse its discretion by determining, upon the undisputed facts set forth in the summary judgment record, that specific performance is an appropriate remedy for appellees. *See Longfellow v. Racetrac Petroleum, Inc.*, No. 02-06-00124-CV, 2008 WL 2404233, at *2–3, 5 (Tex. App.—Fort Worth June 12, 2008, pet. filed) (mem. op.).

### c. Validity and Enforceability of Original Contract

Paciwest additionally contends that the original contract is neither valid nor enforceable because it is not supported by consideration and lacks mutuality of obligation. Specifically, Paciwest claims that the contract obligates Warner Alan to purchase the property only if it receives the lender's approval of the loan assumption but that it is not under any obligation to seek such approval and that it could simply terminate by failing to seek such approval. Thus,

---

[6] Neill averred in his affidavit that additional funds were available at closing to supplement the $250,000 paid toward the prepayment penalty.

according to Paciwest, it had the obligation to sell the property at all times, but Warner Alan never had the obligation to purchase it.

Paciwest's argument fails to take into account the evidence showing that it had agreed to amend the contract to provide that Warner Alan would pay off Paciwest's loan at closing; upon that agreement, Warner Alan was obligated to fund the purchase price at closing if it failed to terminate during the bargained-for inspection period. Moreover, numerous contract provisions bind both Warner Alan and Paciwest. Section 1.3, describing the initial escrow to be deposited by Warner Alan, specifically states that if Warner Alan terminates the contract by right under the contract, Paciwest would be entitled to $100 of the initial escrow deposit as independent consideration for the contract.

As to Paciwest's argument that Section 4.4 of the contract—which states in one part that Warner Alan's "failure to obtain Lender's approval of the proposed assumption in a manner consistent with [section 4.4] shall not be a default by [Warner Alan] under [the contract], but shall entitle [Warner Alan] to terminate [the contract], [and] receive a refund of the Escrow Deposit"—allowed Warner Alan to avoid any obligation under the contract by simply failing to seek the lender's approval of the loan assumption, Paciwest reads this single sentence of section 4.4 out of context. The beginning of the provision obligates Warner Alan to,

[w]ithin five (5) business days after [its] receipt of Lender's list of required information, . . . *apply to Lender for its consent* to [Warner Alan's] acquisition of the Property pursuant to this Agreement and for permission to assume the Note, and *thereafter [to] diligently seek to obtain Lender's approval of such application*. [Emphasis added.]

Thus, even the provision pointed to by Paciwest, when read in its entirety, shows that both parties were mutually obligated under the contract, regardless of the termination rights available to Warner Alan. We conclude and hold that the summary judgment record shows that the contract, as initially entered into and as amended, was supported by adequate consideration. *See Alex Sheshunoff Mgmt. Svcs, Inc. v. Johnson*, 209 S.W.3d 644, 658 (Tex. 2006).

We overrule Paciwest's first issue.

### d.     Whether Trial Court Should Have Granted Paciwest's Motion

Paciwest's second issue incorporates the arguments in its first issue that Westcliff is not entitled to specific performance of the contract. However, it also argues that if this court does hold that the trial court did not err by determining that Westcliff is entitled to specific performance, there are nevertheless fact issues precluding summary judgment. Specifically, it contends that there are fact issues concerning "whether any agreement existed as to the different terms or modifications alleged by Warner Alan and accepted by the Trial Court." However, Paciwest cites no other evidence that was not already discussed in its first issue, and we discern no fact issues precluding the

28

trial court's grant of summary judgment in appellees' favor. Thus, we overrule

Paciwest's second issue.

**Cross-Appeal**

In a single issue on cross-appeal, appellees challenge the trial court's

ruling that the only relief to which they are entitled is specific performance.

This ruling occurred as a result of Paciwest's *Robinson* challenge to

appellees' damages expert. The trial court held a hearing on Paciwest's

objections on May 17, 2007. At the hearing, the trial court specifically directed

the parties to brief whether appellees were entitled to additional damages

having elected to seek, and having obtained, specific performance.

After taking the issue under advisement, on June 18, 2007, the trial court

sent the parties a letter stating that

> [i]t appears that Texas law favors [Paciwest's] Objections to
> Reliability and Foundation of Opinions of Dr. Frank Voorvaart. I
> agree with [Paciwest] that [appellees'] remedies are limited to those
> allowed by the terms of the contract and there is no contractual
> foundation for Dr. Voorvaart's damage opinions because [appellees]
> sought and obtained summary judgment for specific performance.

The trial court's order incorporating this ruling, dated June 26, 2007, states

that appellees,

> having sought and obtained a summary judgment for specific
> performance, have elected specific performance as their remedy;

29

Thus, the law and relevant contract provisions do not provide for the recovery of the additional damages sought by [appellees] in this case;

That the matters to which Dr. Voorvaart was designated to testify are directed at these additional damages;

That [Paciwest's] [o]bjections are well taken and should be SUSTAINED, that Dr. Voorvaart's opinions should be STRICKEN, and that [appellees] should be prohibited from presenting the testimony and opinions of Dr. Voorvaart at the time of trial. It is therefore,

ORDERED, ADJUDGED, and DECREED that [Paciwest's] Objections and Supplemental Objections to Reliability and Foundation of Opinions of Dr. Frank Voorvaart are SUSTAINED, Dr. Voorvaart's opinions are hereby STRICKEN, and that [appellees] are prohibited from presenting any of the Dr. Voorvaart's testimony and opinions at trial.

Although Paciwest contends that the trial court could have based its ruling on its other objections to Dr. Voorvaart's testimony, construing the trial court's order as a whole to give effect to all provisions, we conclude that the trial court's ruling was based solely on its conclusion that damages were no longer available to appellees after they had already elected to seek, and had obtained, specific performance as a remedy. *See Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). Thus, we will confine our analysis to the trial court's specific ruling.[7]

---

[7] Accordingly, appellees were not required to make an offer of proof to preserve this argument, as Paciwest contends. *See Echols v. Wells*, 510

The general rule is that damages constitute an alternative remedy available only when specific performance either is not sought or is not available. *Foust v. Hanson*, 612 S.W.2d 251, 253 (Tex. Civ. App.—Beaumont 1981, no writ); *see Heritage Housing Corp. v. Ferguson*, 674 S.W.2d 363, 365 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). But in appropriate circumstances, the court may order, in addition to specific performance, payment of expenses incurred by plaintiffs as a result of a defendant's late performance. *Heritage Housing Corp.*, 674 S.W.2d at 365–66; *Foust*, 612 S.W.2d at 253–54. This compensation is not considered breach of contract damages, but rather "equalizes any losses occasioned by the delay by offsetting them with money payments." *Heritage Housing Corp.*, 674 S.W.2d at 366. Thus, for example, a purchaser may recover the rental value of property from the time of its demand for performance and tender of the purchase price. *Id*.

Here, appellees pled for, among other things, lost rental, increased construction costs, and an increased interest rate on their third party financing as a result of Paciwest's delay in performing its obligations under the contract. Because post-closing damages such as these are not in the nature of benefit of the bargain damages, but rather an accounting between the parties pending

---

S.W.2d 916, 919 (Tex. 1974); *Lewis v. Lewis*, 853 S.W.2d 850, 852 (Tex. App.—Houston [14th Dist.] 1993, no writ).

31

performance of the contract, we conclude and hold that the trial court erred by determining that appellees were precluded from seeking and presenting evidence as to these types of damages at trial.

We sustain appellees' sole issue in their cross-appeal.

## Conclusion

Having overruled Paciwest's three issues, we affirm the part of the trial court's judgment incorporating its summary judgment rulings in favor of appellees. Having sustained appellees' sole issue in their cross-appeal, however, we reverse that part of the trial court's judgment barring appellees from recovering damages attributable to Paciwest's delay in performing the contract. We remand that part of the case to the trial court for consideration of Paciwest's other objections to the testimony of appellees' damages expert and for further proceedings as to those alleged damages consistent with this opinion.

TERRIE LIVINGSTON
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED: September 11, 2008

32