

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-10-00378-CV**

PACIWEST, INC.                                                  APPELLANT
                                                            AND APPELLEE

V.

WARNER ALAN PROPERTIES,                                        APPELLEES
LLC, AND WARNER                                          AND APPELLANTS
ALAN/WESTCLIFF, LTD.

----------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1] ON REHEARING

----------

After reviewing the motion for limited rehearing filed by Warner Alan Properties, LLC (Warner Alan Properties) and Warner Alan/Westcliff, Ltd. (Westcliff), and the motion for rehearing filed by Paciwest, Inc., we deny both motions. But to correct and clarify the relief granted to Warner Alan Properties and Westcliff in our

---

[1]*See* Tex. R. App. P. 47.4.

May 31, 2012 opinion and judgment, we withdraw our opinion and judgment of that date and substitute the following.

## Introduction

Paciwest, Inc. appeals from the trial court's judgment in favor of Warner Alan Properties and Westcliff on their breach of contract claim against Paciwest. Westcliff is Warner Alan's successor-in-interest. We will refer to Appellees generally as Warner Alan except where the context requires more specificity.

In eight issues, Paciwest complains about the trial court's award of prejudgment interest, its failure to set off certain amounts from Warner Alan's damages, its exclusion of evidence, and its failure to condition its award of Warner Alan's appellate attorney's fees on Warner Alan's successful appeal. Warner Alan also appeals, arguing in one issue that the trial court erred by not awarding it the full amount of attorney's fees stipulated by the parties. We hold that the trial court did not err by awarding prejudgment interest or by not granting Paciwest a setoff. We also hold that any error in excluding evidence or failing to condition Warner Alan's attorney's fees was harmless. But we further hold that the trial court did err by not awarding Warner Alan the stipulated attorney's fees. We therefore modify the trial court's judgment to award the stipulated attorney's fees and affirm the judgment as modified.

## Background

A dispute arose between Paciwest and Warner Alan over a real estate contract between them. The contract called for Paciwest to sell an apartment

2

complex to Warner Alan, with closing fifteen days after the assumption by Warner Alan of Paciwest's note on the property. The dispute between the parties arose before closing when, among other things, Warner Alan indicated its intention to pay off Paciwest's note rather than assume it. After Paciwest notified Warner Alan that Paciwest considered the contract terminated by its own terms, Warner Alan sued Paciwest on October 3, 2005, for specific performance and declaratory judgment. Among other relief, Warner Alan sought "the difference in interest rates and interest payments caused by [Paciwest's] failure to transfer the Property on September 30, 2005," lost profits, and increases in the cost of financing improvement projects.

On March 27, 2007, the trial court granted partial summary judgment for Warner Alan, ordering that Warner Alan could pay off the note rather than assuming it, that Paciwest breached the sales contract, and that Warner Alan was entitled to specific performance. The summary judgment did not determine the amount of Warner Alan's damages caused by Paciwest's failure to convey the property or the amount of Warner Alan's reasonable and necessary attorney's fees.

Paciwest objected to Warner Alan's damages expert on numerous grounds, and argued that Warner Alan could not recover damages in addition to specific performance.[2] On June 26, 2007, the trial court signed an order finding that Warner Alan had elected specific performance as its remedy and that "the law and relevant

---

[2]*See Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 566 (Tex. App.—Fort Worth 2008, pet. denied) ("*Paciwest I*").

3

contract provisions do not provide for the recovery of the additional damages" sought by Warner Alan.

Thus, the only issue not yet determined at that point was the amount of Warner Alan's reasonable and necessary attorney's fees. This issue was addressed by the parties' stipulation, which was filed with the trial court on August 16, 2007 (the 2007 Stipulation). Paragraph one of the stipulation states that if Paciwest was determined "after all appeals have been exhausted" to have breached the contract, Warner Alan would be entitled to an award of reasonable and necessary attorney's fees of $277,700 in the trial court, $60,000 if appeal was taken to the court of appeals, $10,000 for appeal to the Supreme Court of Texas, and $20,000 if that court requested full briefing.

Paragraph three of the stipulation further provides that if Paciwest appealed from a finding of breach of contract and the finding was affirmed on appeal, "but this case is remanded for further consideration of [Warner Alan's] claims for damages," then the stipulation in paragraph one "shall remain effective," and Warner Alan "shall be entitled to an additional award of attorneys' fees from Paciwest." The additional attorney's fees stipulated to in this paragraph includes both the $46,723.50 in "reasonable and necessary" attorney's fees that Warner Alan had already incurred pursuing its damages claim, as well as the reasonable and necessary attorney's fees that Warner Alan ultimately incurred on remand, "in an amount to be determined by the trier-of-fact or by further stipulation."

4

With all issues now disposed of, the trial court rendered a final judgment. Both sides then appealed.[3]

In that appeal, this court affirmed the trial court's judgment in part but reversed the trial court's determination that Warner Alan could not recover damages.[4] This court noted the rule that "in appropriate circumstances, the court may order, in addition to specific performance, payment of expenses incurred by plaintiffs as a result of a defendant's late performance" and that "[t]his compensation is not considered breach of contract damages, but rather 'equalizes any losses occasioned by the delay by offsetting them with money payments.'"[5] Accordingly, we remanded "that part of the case to the trial court for consideration of Paciwest's other objections to the testimony of [Warner Alan's] damages expert and for further proceedings as to those alleged damages consistent with [our] opinion."[6]

On remand, the trial court entered an order decreeing that "the only issues remaining to be tried . . . are the amount of damages that were caused by Paciwest's delay in selling the Property and the amount of [Warner Alan's] reasonable and necessary attorneys' fees." The court further ordered that Paciwest was "precluded from offering any evidence or argument to the jury that is not

---

[3] *Id.*

[4] *Id.* at 575.

[5] *Id.*

[6] *Id.*

relevant to the issues of the amount of damages that were caused by Paciwest's delay in selling the Property and the amount of [Warner Alan's] reasonable and necessary attorneys' fees."

On February 5, 2010, the parties filed a second stipulation of attorney's fees (the 2010 Stipulation). This stipulation stated that the 2007 Stipulation remained in effect "and will be interpreted by the Court." The parties then stipulated "that the following attorney's fees have been or will be reasonably and necessarily incurred by [Warner Alan] in connection with this matter," including the following amounts: $191,488.96 "[a]fter remand through January 31, 2010"; $80,000 "[f]rom February 1, 2010 through trial"; $30,000 for appeal to the court of appeals; and $7,500 for petition for review to the Supreme Court, plus an additional $20,000 if that court requested full briefing.

Jury trial began on February 8, 2010. The jury found damages for Warner Alan of $442,814 in lost profits; $180,923.82 from the increase in financing costs; $68,524 from the increase in the amount of prepayment penalty Warner Alan paid; and $4,484 in loan application fees that Warner Alan had paid in connection with the original closing date. The jury further found that Paciwest received $870,718 in profit from owning the apartments from the time of the original closing date until the date of the court-ordered sale of the property to Warner Alan.

On August 5, 2010, the trial court signed a judgment that awarded to Warner Alan the amounts found by the jury. Additionally, the judgment awarded: (1) prejudgment interest on the lost profits damages in the amount of $106,563.49; (2)

6

$3,136.77 in prejudgment interest on the increased prepayment penalty damages; (3) $1,079.08 in prejudgment interest on the loan application fees; and (4) $23,751.28 prejudgment interest on attorney's fees.

The judgment also awarded Warner Alan $60,000 in attorney's fees in the event Paciwest appealed the judgment to this court, $7,500 in attorney's fees in the event of an appeal to the Supreme Court, and $20,000 if the Supreme Court requested full briefing. The award of appellate attorney's fees was not conditioned on Paciwest's appeal being unsuccessful. Both parties now appeal from the August 5, 2010 judgment.

## Paciwest's Appeal

We first consider Paciwest's second issue, under which it argues that the trial court's judgment is not supported by its findings of fact and conclusions of law. Paciwest makes several arguments under this issue. Its primary argument is that there is no finding of fact that directly or indirectly finds that the award of damages reflected in the judgment places Paciwest and Warner Alan in the positions they would have occupied had the contract been performed on September 30, 2005 and that no finding of fact or conclusion of law provides that the award to Warner Alan is equitable or just considering all the relevant circumstances. Paciwest further contends that under rule 299 of the rules of civil procedure, no such finding may be implied.

Rule 299 states,

> When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, *no* element of which has been included in the findings of fact; but when *one or more elements* thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.[7]

Paciwest contends that without a finding of fact that the award of damages places the parties as nearly as possible in the positions they would have occupied had the contract been performed on September 30, 2005, that the balancing of the equities requires the award to Warner Alan, or that such payment is equitable and just under the circumstances, there exists no factual or legal basis for the equitable award of damages to Warner Alan. In its reply brief, Paciwest further states that "no element of the ground of recovery for equitable relief exists within the trial court's findings of fact and conclusions of law."

We are unsure what "elements" Paciwest believes should have been found by the trial court before it could award the relief ordered in its judgment.[8] Warner Alan had already successfully established its claim for breach of contract, as affirmed by this court in *Paciwest I*.[9] All that remained to be determined by the trial court was whether Warner Alan was entitled to additional equitable relief, and, if so, in what

---

[7]Tex. R. Civ. P. 299 (emphasis added).

[8]*See* Black's Law Dictionary 597 (9th ed. 2009) (defining "element" as "[a] constituent part of a claim that must be proved for the claim to succeed").

[9]*Paciwest I*, 266 S.W.3d at 570–71.

amount. In our prior opinion, we held that Warner Alan's election to seek specific performance did not prevent it from seeking compensation for expenses caused by Paciwest's delay.[10] We noted that a trial court may, "in appropriate circumstances," order payment of expenses incurred by the plaintiff because of the defendant's late performance, and we stated that such compensation "'equalizes any losses occasioned by the delay by offsetting them with money payments.'"[11] We remanded for further proceedings regarding any such losses that Warner Alan may have suffered because of Paciwest's delay. Thus, on remand, the trial court was required to determine whether "appropriate circumstances" existed to order payment of Warner Alan's expenses, and, if so, to determine what payments by Paciwest would equalize Warner Alan's losses. If there were any other "elements" that Warner Alan still needed to establish, Paciwest does not identify them.

Warner Alan did, however, have to present evidence of the losses it suffered because of Paciwest's delay, and the trial court was required to consider all the circumstances of the parties' dealings in balancing the equities.[12] In its findings of fact and conclusions of law, the trial court noted that it had conducted an evidentiary hearing at which "Paciwest offered evidence of 'equitable adjustments' it contended

[10]*Id.*

[11]*Id.* (quoting *Heritage Housing Corp. v. Ferguson*, 674 S.W.2d 363, 365–66 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)).

[12]*See Flores v. Flores*, 116 S.W.3d 870, 876 (Tex. App.—Corpus Christi 2003, no pet.) (stating that "[e]quity seeks to . . . strike a balance by reviewing the entire situation").

the [trial court] could make 'in appropriate circumstances.'" The trial court found that Paciwest had caused the delay in closing; that because of Paciwest's delay, Warner Alan had incurred lost profits, increased financing costs, increased prepayment penalty, and loan application fees in the amounts found by the jury; and that Warner Alan did not earn interest on the purchase money during the delay because it was buying the property through third-party financing rather than with cash. The trial court then made a number of conclusions of law, including that "[t]he facts of this case provide appropriate circumstances to require Paciwest to compensate [Warner Alan] for the losses caused by Paciwest's failure to timely convey" the property.

Contrary to Paciwest's contentions, the trial court did make some findings in support of its judgment, and Paciwest does not argue that there was no evidence to support these findings. Paciwest directs us to no case, and we have found none, holding that to award the compensation ordered in this case, the trial court had to make a finding containing the specific words that "the award of damages places the parties as nearly as possible in the position they would have occupied had the contract been performed," that "the balancing of the equities requires the [award]," or that "such payment is equitable and just under the circumstances." We overrule this part of Paciwest's second issue.

Paciwest also argues that the trial court "analyzed the question . . . not as an equitable proceeding, but rather as one involving 'legal damages.'" As an example, it points to the trial court's conclusions of law in determining whether the parties were "entitled" to various awards or offsets. Paciwest argues that "'[e]ntitlement'

10

however is not the material question" and that "[t]he actual question is whether such an offset is equitable . . . and [is] necessary to balance the equities." But from the context, it is clear that the trial court did not use the word "entitlement" to indicate a legal right but instead merely to indicate whether, under the circumstances, the award or offset should be ordered.

As further alleged proof that the trial court did not conduct the proceedings as "equitable proceedings," Paciwest points to the trial court's finding that Warner Alan did not have cash on hand to pay the purchase price and had to resort to third-party financing. Paciwest argues that this finding shows that the trial court "analyze[d] the issue purely from the perspective of Warner Alan" and "failed to take into account the position both parties would have been in had the contract been performed on . . . September 30, 2005." We do not see how one finding by the trial court—which Paciwest does not argue was incorrect—shows that the trial court failed to properly analyze the issues before it on remand or failed to properly "balance the equities." We overrule Paciwest's second issue.

In its third issue, Paciwest contends that the trial court's failure to find a reasonable rate of interest on the purchase price of the apartments or an increase in the value of the apartments attributable to Paciwest's efforts and to set off those amounts from Warner Alan's damages was an abuse of discretion and reversible error. In a claim for equitable relief, a trial court has broad discretion in balancing

11

competing equities.[13] We will not disturb a trial court's ruling in such a matter unless the trial court acted without reference to any guiding rules or principles—in other words, unless the trial court's ruling was arbitrary or unreasonable.[14]

We first address the trial court's failure to award Paciwest an offset for any increase in the value of the property attributable to Paciwest's efforts. In a letter to the parties, which the trial court adopted as its findings of fact and conclusions of law, the trial court stated that it "found no credible evidence that increase in value (if, indeed, there was one) was the result of any action by [Paciwest]." In its amended findings of fact and conclusions of law, however, the trial court gave no basis for its decision not to award this offset requested by Paciwest. Regardless of the basis of the trial court's decision, though, Paciwest does not make any argument under this issue about why the trial court's decision was an abuse of discretion. We therefore overrule this part of Paciwest's issue.[15]

Regarding the trial court's failure to offset a reasonable amount of interest on the purchase price, Paciwest's argument does not address the profits that it earned while it retained ownership of the property in breach of the contract, profits that the trial court allowed Paciwest to keep on equity grounds. If Paciwest truly wanted to

---

[13]*Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 836 (Tex. App.—Dallas 2008, pet. denied).

[14]*Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

[15]*See* Tex. R. App. P. 38.1(i).

be placed "in the position it would have been in pursuant to the performance of that contract," as Paciwest argues the trial court should have placed the parties, then Paciwest could not have retained those profits. And the amount of those profits exceeded the amount that Warner Alan was awarded in the judgment—meaning that if Warner Alan had not been awarded its attorney's fees, Paciwest would have ultimately profited from its breach of contract.[16] We cannot say that the trial court abused its discretion in its balancing of the equities by not awarding Paciwest a setoff of the interest on the purchase price it would have earned if it had not breached the contract.

Paciwest contends in its reply brief that the trial court did not base its decision not to award it the offset on the ground that Paciwest was allowed to keep the profits it had earned while in breach of the contract. In its findings of fact and conclusions of law, with respect to allowing Paciwest to keep the profits, the trial court stated, "Warner Alan/Westcliff is not entitled to recover the amount of profit Paciwest earned from October 1, 2005 through August 26, 2009. Equity dictates that the Court not punish Paciwest for being a more frugal manager of the property [than] Warner Alan/Westcliff would have been." Regarding its decision not to award Paciwest an offset for the amount of interest it could have earned on the purchase

---

[16] *See Alamo Auto. Co. v. Schmidt*, 211 S.W. 804, 805 (Tex. Civ. App.—San Antonio 1919, writ ref'd) (noting that it would be unjust and inequitable to reward the party who had breached the contract); *see also Flores*, 116 S.W.3d at 876 (stating that "[e]quity seeks to do justice, to strike a balance by reviewing the entire situation" and that "[e]quity acts in accordance with conscience and good faith and promotes fair dealing").

13

money, the trial court gave no basis for its decision. But even if the trial court's conclusion was not a proper basis for the trial court's decision not to award an offset, we will affirm the trial court's judgment if it is otherwise correct.[17] Because we have held that the trial court's balancing of the equities was not an abuse of discretion, we overrule Paciwest's third issue.

In its first issue, Paciwest argues that the trial court's February 5, 2010 ruling excluding evidence was an abuse of discretion and reversible error. In its argument under this issue, Paciwest contends that the trial court prohibited it from offering evidence of the value of the loss of the use of the purchase money that Paciwest would have received had it not breached the contract. Paciwest argues that the trial court's refusal to admit such evidence was an abuse of discretion. Even if the trial court refused to admit such evidence and such refusal was an abuse of discretion, because we have held that Paciwest was not harmed by the trial court's decision not to award Paciwest an offset for the amount of interest it could have earned on the purchase money, we overrule this part of Paciwest's issue.

Paciwest also argues under its first issue that the trial court prohibited Paciwest from presenting any evidence concerning the "circumstances surrounding the transaction" and its breach of the contract, as well as evidence about the

---

[17] *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) ("If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal."); *Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 210 (Tex. App.—Fort Worth 1992, writ denied) (same).

14

increased appraisal value of the property, which it contends was attributable to its efforts. But Paciwest does not point out in its brief what specific evidence the trial court should have considered but that Paciwest was prohibited from offering or what matters this evidence related to, nor does Paciwest make any argument about how it was harmed by the exclusion of this evidence. Although Paciwest references its statement of facts, we have reviewed its statement of facts and cannot determine what specific evidence it refers to or what circumstances the evidence relates to.[18] We therefore overrule this part of Paciwest's issue as inadequately briefed, and, accordingly, we overrule Paciwest's first issue.

Paciwest argues in its fourth issue that the trial court abused its discretion by awarding Warner Alan prejudgment interest on lost profits starting from the date of October 3, 2005. It argues that prejudgment interest is recoverable "when an ascertainable sum of money is determined to have been due and payable at a definite date prior to judgment." Paciwest further contends that Warner Alan did not request any findings about the dates that Warner Alan's damages accrued, and therefore "the trial court and this court can only speculate with regard to the actual dates of accrual of such purported damages."

---

[18] *See* Tex. R. App. P. 38.1(i); *Allegiance Hillview, L.P. v. Range Tex. Prod., LLC*, 347 S.W.3d 855, 873 (Tex. App.—Fort Worth 2011, no pet.) ("An inadequately briefed issue may be waived on appeal."); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing the "long-standing rule" that a point may be waived due to inadequate briefing).

A trial court may award prejudgment interest under an enabling statute or under its general principles of equity.[19] The prejudgment award in this case was based on the trial court's equitable powers rather than under any statute. In *Johnson & Higgins of Tex., Inc.*, the Supreme Court held that "under the common law, prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed."[20] That court also held that such "interest shall be computed as simple interest."[21] Paciwest attempts to distinguish *Johnson & Higgins* by arguing that in that case, "the award of [prejudgment] interest was upon amounts found to be legal damages"[22] whereas in this case, the trial court was "undertaking its equitable obligation to balance the equities so as to place the parties in the position which they would have occupied had the contract been performed pursuant to its terms." But the Supreme Court has not limited its holding to compensation awarded as a legal rather than an equitable remedy. That court set out one method of calculating

---

[19]*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998).

[20]*Id.* at 531; *see also Smith v. Huston*, 251 S.W.3d 808, 827 (Tex. App.—Fort Worth 2008, pet. denied).

[21]*Johnson & Higgins*, 962 S.W.2d at 532.

[22]*See Am. Med. Electronics, Inc. v. Korn*, 819 S.W.2d 573, 577 n.3 (Tex. App.—Dallas 1991, writ denied) (defining the term "damages" as "any invasions of the plaintiff's legally protected interest").

prejudgment interest under the common law, and that is the method that the trial court applied in this case.

Furthermore, the *Johnson & Higgins* court stated that prejudgment interest serves the objective of expediting settlement and trials as well as "the goal of compensating plaintiffs, without overcompensating them or simultaneously punishing defendants."[23]  These objectives are just as applicable when the plaintiff's claim is equitable in nature and were not frustrated by the trial court's award in this case.  We therefore cannot say that the trial court abused its discretion in its prejudgment interest award.

Paciwest relies on *Byram v. Scott*, a memorandum opinion from the Austin Court of Appeals, to support its argument that the trial court should have calculated the prejudgment interest on Warner Alan's lost profits as they became "due and payable" and that, because there were no findings about the dates of the accrual of those lost profits, the trial court's calculation of interest was an abuse of discretion. In *Byram*, Scott sued Byram for breach of an option contract and sought specific performance.[24]  The trial court awarded Scott specific performance and also awarded the amount that Scott had paid in monthly rent from the time the sale

---

[23]*Johnson & Higgins*, 962 S.W.2d at 532; *see also Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 486 (Tex. App.—Fort Worth 2004, no pet.) (op. on reh'g) (noting that an "award of prejudgment interest advances two ends: 1) achieving full compensation to plaintiffs; and 2) expediting both settlements and trials").

[24]*Byram v. Scott*, No. 03-07-00741-CV, 2009 WL 1896076, at *2 (Tex. App.—Austin July 1, 2009, pet. denied) (mem. op.).

should have closed until the time the sale actually closed, plus prejudgment interest "at the applicable judgment interest rate, on each monthly rental award."[25] But the trial court's calculation of prejudgment interest was not at issue; the case therefore does not help Paciwest. We overrule Paciwest's fourth issue.

In its fifth issue, Paciwest argues that lost profits are not the proper measure of damages for lost use of the apartments and that the trial court therefore abused its discretion by awarding Warner Alan compensation for lost profits. Paciwest argues that the ordinary method for calculating damages for a temporary loss of use of property is the rental value of the property and that, if the property is not rentable, "the owner may resort to proving the actual worth of the use." Paciwest contends that Warner Alan produced no evidence concerning either the rental value of the property or its not being rentable. In response, Warner Alan asserts that Paciwest never objected to the jury charge on the ground that lost profits were not the correct measure of damages and that it did not submit a jury question on rental value.

Question number one of the jury charge asked the jury to determine "[w]hat sum of money, if any, if paid now in cash, would fairly and reasonably compensate Warner Alan/Westcliff for its damages, if any, that resulted from the delay in closing from September 30, 2005, to August 27, 2009[.]" The question then set out four categories of damages and asked the jury to determine the amount of Warner Alan's damages, if any, in each category. Part 1(a) asked the jury to determine "[t]he lost

---

[25]*Id.*

18

profits Warner Alan/Westcliff would have received from owning [the apartments] from October 1, 2005, through August 26, 2009." Other subparts of question one asked the jury to determine the increase in financing costs to Warner Alan; the increase in the amount of prepayment penalty that Warner Alan paid in purchasing the apartments in 2009 instead of in 2005; and the loan application fees that Warner Alan had paid in connection with the September 2005 closing that were not reimbursed.

In its objections at the charge conference, Paciwest objected to question number one, but not on the ground that lost profits were not a proper measure of damages. Paciwest objected to that question as follows:

> Defendant believes that Question Number 1 is contrary to the broad-form submission required by the Texas Supreme Court. We also believe that Question Number 1 unfairly allows the plaintiff to essentially have four different bites at the same apple by requiring the jury to go through and separately pull out each—each element of damage. We believe that the appropriate question to the jury would be the question that was submitted as Defendant's Proposed Jury Instruction Number 1 and that—[w]e believe that that proposed question is the question that should be in the charge.

Paciwest's proposed damages question asked broadly, "What is the amount of damages, if any, incurred by Warner Alan as a result of the delay in the closing of the sale of the Westcliff Manor Apartments from September 30, 2005 through August 26, 2009?"

To preserve error in the jury charge, a party must make the trial court aware of the complaint and obtain a ruling.[26] Paciwest did not take any steps to make the trial court aware of its complaint that lost profits were not the proper measure of damages. Accordingly, Paciwest did not preserve this complaint for appellate review. We therefore overrule Paciwest's fifth issue.

In Paciwest's sixth issue, it argues that the trial court abused its discretion by awarding Warner Alan damages for increased financing costs and prepayment penalties when there was no evidence or insufficient evidence that Paciwest caused such damages. In Paciwest's argument under this issue, it contends that Warner Alan had the option to assume Paciwest's note and that if it had done so, it would not have suffered any additional costs concerning the prepayment penalty or increased financing. Paciwest contends that the additional costs incurred by Warner Alan were caused by its own choice to seek third-party financing and not by any delay in the closing. Paciwest argues that there is thus no evidence or insufficient evidence to support the findings by the jury with respect to those categories of damages. Paciwest cites no authority in support of its argument under this issue.[27]

Although Warner Alan had the option of assuming the note under the original terms of the sales contract, it was not required to do so. We previously held that the

---

[26]*State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) (op. on reh'g); *see* Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 274 (requiring a party objecting to a charge to point out distinctly the objectionable matter and the grounds of the objection).

[27]*See* Tex. R. App. P. 38.1(i); *Allegiance Hillview*, 347 S.W.3d at 873.

terms of the contract allowed Warner Alan to obtain third-party financing to pay off the note rather than assuming the note.[28] But even though Warner Alan had a right under the contract to obtain third-party financing, Paciwest refused to honor the contract on those terms and refused to close—in breach of the parties' agreement. The increased financing costs and prepayment penalties were therefore caused by Paciwest's breach, and Warner Alan was entitled to be compensated for the expenses it incurred because of the delay caused by Paciwest's breach.[29]

In its reply brief, Paciwest argues that Warner Alan did not submit any evidence from which the jury could have calculated an increase in financing terms, and, regarding the prepayment penalty, that Warner Alan produced no evidence that the lender had calculated a payoff amount. Paciwest did not raise these arguments in its original appellant's brief, and we therefore decline to consider them.[30] We overrule Paciwest's sixth issue.

In its seventh issue, Paciwest argues that the trial court abused its discretion by awarding prejudgment interest to Warner Alan on a portion of its attorney's fees because a party is not entitled to prejudgment interest on attorney's fees.[31] In

---

[28] *Paciwest I*, 266 S.W.3d at 569–70.

[29] *See Heritage Housing*, 674 S.W.2d at 365–66.

[30] *See In re M.D.H.*, 139 S.W.3d 315, 318 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g) ("A reply brief may not be used to raise new complaints.").

[31] *See Carbona v. CH Med., Inc.*, 266 S.W.3d 675, 688 (Tex. App.—Dallas 2008, no pet.) (noting that "prejudgment interest cannot be recovered on attorney's fees").

response, Warner Alan argues that the trial court awarded prejudgment interest only on the $347,000 in attorney's fees that became due and payable per the parties' stipulations upon Paciwest's unsuccessful prior appeal and that there is no abuse of discretion "in awarding equitable prejudgment interest on a contractual obligation once that obligation becomes payable." Warner Alan further argues that Paciwest waived this complaint because it never raised it in the trial court. Paciwest counters that it preserved this issue in both its motion for new trial and its motion for entry of judgment.

Paciwest has not directed this court to any place in the record where it complained to the trial court that Warner Alan should not have been awarded prejudgment interest on its attorney's fees. Paciwest filed a motion to modify the judgment in which it objected that prejudgment interest should not have been awarded generally because "there exists no evidence of the amounts of principal or the dates of commencement from which such interest could be calculated." This objection does nothing to make the trial court aware of Paciwest's objection that prejudgment interest may not be awarded on attorney's fees.

Paciwest also objected in that motion that the trial court "erred in awarding attorney['s] fees to Plaintiffs in that it misapplied the stipulation of the parties and made an excessive award thereof." But that complaint did not give any indication that Paciwest was objecting to the award of *prejudgment interest* on the attorney's fees. Given Paciwest's objection in its motion for judgment that any award to Warner Alan of attorney's fees for its cross-appeal should be limited to the fees

provided in the 2007 Stipulation, Paciwest's later objection that the trial court's award of attorney's fees was "excessive" was not sufficient to make the trial court aware that Paciwest's complaint related to prejudgment interest on those fees.

In Paciwest's motion for new trial, it argued that the trial court "erred in awarding prejudgment interest to [Warner Alan] in that there was factually insufficient evidence concerning the amount of principal and the commencement dates of the calculation of such interest," but it did not argue that the trial court erred by awarding prejudgment interest on attorney's fees. Because Paciwest did not object in the trial court about the award of prejudgment interest on Warner Alan's attorney's fees, it did not preserve this complaint for our review.[32]

In its reply brief, Paciwest argues that the trial court's award of prejudgment interest on the attorney's fees violated the stipulation between the parties regarding attorney's fees. But this argument is not the same argument raised by Paciwest in

---

[32] *See Morton v. Hung Nguyen*, No. 14-11-00126-CV, 2012 WL 1743465, at *14 (Tex. App.—Houston [14th Dist.] May 17, 2012, no. pet.) (op. on reh'g) ("A complaint regarding the award of pre-judgment interest must be preserved in the trial court by a motion to amend or correct the judgment or by a motion for new trial."); *McLemore v. Johnston*, 585 S.W.2d 347, 349 (Tex. Civ. App.—Dallas 1979, no writ) (holding that Johnston had waived its complaint about the trial court's award of prejudgment interest by not bringing the complaint to the attention of the trial court); c*f. Reliance Ins. Co. v. Dahlstrom Corp.*, 568 S.W.2d 733, 737 (Tex. Civ. App.—Eastland 1978, writ ref'd n.r.e.) (noting that after judgment, Reliance had filed a motion to correct the judgment, contending, among other things, that Dahlstrom was not entitled to prejudgment interest and that the trial court had then reduced the amount of the interest).

23

its original appellant's brief, and we therefore decline to consider it.[33]  We overrule Paciwest's seventh issue.

In its eighth and final issue, Paciwest argues that the trial court's failure to condition its award of Warner Alan's attorney's fees upon Warner Alan's success on appeal was an abuse of discretion.  We agree that a trial court must condition an award of appellate attorney's fees to a party on that party's success on appeal[34] and that the trial court should have done so in this case.  But because we have overruled all of Paciwest's other issues, the error is nonreversible error.[35]  We overrule Paciwest's eighth issue.

### Warner Alan's Appeal

In the sole issue in its appeal, Warner Alan argues that the trial court erred by failing to award all of its stipulated attorney's fees.  Warner Alan asks this court to modify the judgment to award it (1) $110,641.36 for fees incurred in its successful cross-appeal in *Paciwest I*; (2) $131,001.62 for fees it incurred in the trial court between the time of the trial court's grant of summary judgment in 2007 and this court's decision in *Paciwest I* (including $38,607.21 for the negotiation of a gas lease on the property); and (3) $20,000 for fees it incurred in post-trial proceedings.

---

[33]*See M.D.H.*, 139 S.W.3d at 318.

[34]*Arena v. Arena*, 822 S.W.2d 645, 651 (Tex. App.—Fort Worth 1991, no writ).

[35]*See id.* ("[I]f the party awarded the [unconditional appellate] attorney's fees is completely successful on appeal, then the error of the trial court will be deemed nonreversible error.").

Warner Alan contends that the parties stipulated that such fees were reasonable and necessary and that the trial court's failure to award them was therefore error.

The 2007 Stipulation includes the following provisions:

1.      In the event [Paciwest] is determined, after all appeals have been exhausted, to have breached the contract the subject of [Warner Alan's] claims and that either [Warner Alan Properties or Westcliff] is entitled to some relief, [Warner Alan] will be entitled to an award from [Paciwest] of reasonable and necessary attorneys' fees . . . as follows: (i) $277,000 in the trial court, (ii) $60,000 if appeal is taken to the Court of Appeals, and (iii) $10,000 if a petition for review is filed with the Supreme Court of Texas and an additional $20,000 if full briefing is requested by the Supreme Court of Texas; and such additional fees, if any, as called for under Paragraph 3.

. . . .

3.      If the Court's finding that [Paciwest] breached the contract is affirmed on appeal, but this case is remanded for further consideration of [Warner Alan's] claims for damages, the stipulation in Paragraph No. 1 shall remain effective, and, if [Warner Alan] obtain[s] an award of damages on remand, after all appeals have been exhausted, [Warner Alan] shall be entitled to an additional award of attorneys' fees . . . as follows: (i) $46,723.50, representing the reasonable and necessary attorneys' fees [Warner Alan] already ha[s] incurred related to their claims for damages and (ii) the reasonable and necessary attorneys' fees [Warner Alan] incur[s] on remand in an amount to be determined by the trier-of-fact or by further stipulation.

The 2010 Stipulation includes the following provisions:

1.      The parties['] prior Stipulation on Attorneys' Fees remains in effect and will be interpreted by the Court.

2.      The parties further stipulate that the following attorneys' fees have been or will be reasonably and necessarily incurred by [Warner Alan] in connection with this matter.

    a.  Cross-appeal:                              $110,641.36

    b.  Postjudgment:                            $92,394.30

| | | |
|---|---|---|
| c. | Gas Lease: | $38,607.32 |
| d. | After Remand through January 31, 2010: | $191,488.96 |
| e. | From February 1, 2010 through trial: | $80,000.00 |
| f. | Post-Trial Proceedings: | $20,000.00 |
| g. | Appeal to the Court of Appeals: | $30,000.00 |
| h. | Petition for Review to the Supreme Court of Texas: | $7,500.00 |
| i. | Full Briefing requested by the Supreme Court of Texas: | $20,000.00 |

Warner Alan's complaint on appeal is that the trial court erroneously failed to award it the fees stipulated by the parties in 2a, 2b, 2c, and 2f.

The trial court's judgment noted that the parties had stipulated to attorney's fees, and it ordered that Warner Alan "have and recover of and from Paciwest reasonable and necessary attorneys' fees in the amount of $347,000 pursuant to the parties' Stipulation on Attorneys' Fees filed on August 16, 2007, plus prejudgment interest in the amount of $23,751.28." The trial court further ordered that Paciwest pay (1) Warner Alan's "reasonable and necessary attorneys' fees in the amount of $318,212.46 pursuant to the parties' stipulation on Attorneys' Fees filed on August 16, 2007 and Stipulation on Attorneys' Fees dated February 5, 2010," (2) "plus an additional $60,000 in attorneys' fees in the event Paciwest pursues an appeal to the Court of Appeals"; (3) "an additional $7,500 in attorneys' fees in the event Paciwest files a petition for review to the Texas Supreme Court"; and (4) "an additional

26

$20,000 in attorneys' fees in the event the Texas Supreme Court requests full briefing."

A stipulation is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys" respecting some matter incident to that proceeding.[36] Some courts of appeals—including this one—have held that a trial court has discretion in modifying or setting aside a stipulation for good cause.[37] And some courts of appeals—including this one—have held that stipulations are binding on the parties, the trial court, and reviewing courts.[38] In this case, however, it does

---

[36] *Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex. 1998).

[37] *See Allen v. Allen*, 704 S.W.2d 600, 605 (Tex. App.—Fort Worth 1986, no writ) ("Setting aside a stipulation ordinarily is within the discretion of the trial court. . . . Good cause must be shown in order to set aside a stipulation."); *see also Porter v. Holt*, 73 Tex. 447, 449, 11 S.W. 494, 494 (1889) (discussing "[a]greements of counsel, made during the progress of a cause" and holding that "in this court such agreements have never been treated as binding contracts, to be absolutely enforced, but as *mere stipulations*, which may be set aside in the sound discretion of the court, when such action may be taken without prejudice to either party") (emphasis added).

[38] *See Garner v. Long*, 106 S.W.3d 260, 269 (Tex. App.—Fort Worth 2003, no pet.); *Morgan v. Ebby Halliday Real Estate, Inc.*, 873 S.W.2d 385, 390 (Tex. App.—Fort Worth 1993, no writ); *see also Penick v. Penick*, 750 S.W.2d 247, 248–49 (Tex. App.—Houston [14th Dist.] 1988) (noting the split between courts of appeals holding that stipulations may be modified or set aside and those holding that stipulations are binding upon trial courts), *rev'd on other grounds by* 783 S.W.2d 194 (Tex. 1988). Courts have consistently held that when a case is tried on agreed stipulated facts under civil procedure rule 263, the agreed stipulations are binding on the trial court and reviewing court. *See* Tex. R. Civ. P. 263; *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex. App.—Fort Worth 1996, writ denied). The disagreement among the courts of appeals seems to arise only in cases such as this one where some but not all of the relevant facts were stipulated by the parties, but our research is not conclusive on that point. We note only that not all courts of appeals are in agreement about a trial court's discretion regarding stipulations in certain contexts.

not appear that the trial court agreed with Warner Alan's interpretation of the stipulations and then exercised its discretion to ignore or set aside the stipulations. Rather, it appears that the trial court agreed with Paciwest that the stipulations simply did not provide for the attorney's fees that Warner Alan now seeks on appeal.

The trial court was faced with construing two documents evidencing the parties' agreements, neither of which was drafted as clearly as it could have been regarding the parties' intent. But upon review of both the 2007 Stipulation and the 2010 Stipulation,[39] we believe that the parties intended the interpretation urged by Warner Alan.

Paragraph one of the 2007 Stipulation is vague and unclear about which fees the parties were intending to stipulate to in that paragraph, but only when read in isolation from the remainder of the document. When paragraph one is read in conjunction with paragraph three, it becomes clear that paragraph one does not include the attorney's fees incurred by Warner Alan in pursuing its damages claim. If paragraph one had been intended to cover the fees relating to the damages claim, then paragraph three—which expressly discusses fees incurred in relation to the damages claim—would have no purpose. But we must construe the stipulation so

---

[39]*See Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 809–10 (Tex. App.—Fort Worth 2006, pet. denied) (applying de novo review to a trial court's interpretation of an unambiguous contract); *First Nat'l Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 142 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.) (applying rules for interpreting contracts to the interpretation of stipulations because "a stipulation constitutes a contract"); *Fid. & Cas. Co. of N.Y. v. Horton & Horton Custom Works, Inc.*, 462 S.W.2d 613, 618 (Tex. Civ. App.—Fort Worth 1971, writ ref'd n.r.e.) (applying rules for interpreting contracts to the interpretation of stipulations).

that no part is meaningless.[40]  Therefore, paragraph one covers the claims other than the damages claim but does not apply to the damages claim.

Paragraph three covers the damages claim, and that paragraph clearly states that if the claim for damages were remanded (which it was) and if Warner Alan were to be awarded damages on remand (which it was), then after all appeals were exhausted, Warner Alan would be entitled to two additional categories of attorney's fees.  First, Warner Alan would be entitled to an award covering the attorney's fees that it had already incurred up to that point in pursuing the damages claim.  The parties stipulated in paragraph three to the amount of those already-incurred fees: $46,723.50.  Second, the parties agreed that Warner Alan would also be entitled to an award covering the amount that it subsequently incurred on remand, in an amount to be determined at a later time, either by the parties through stipulation or by a trier of fact.  That amount was determined by the 2010 Stipulation.

Under the 2007 Stipulation, then, Warner Alan was entitled to an award of attorney's fees in the amount of $46,723.50, as expressly agreed in the 2007 Stipulation, for the attorney's fees that Warner Alan had incurred as of August 16, 2007, in pursuing the damages claim.  Under the same stipulation, Warner Alan was also entitled to an award of the attorney's fees that it had incurred after that date.  Rather than have the amount of those reasonable and necessary attorney's fees

---

[40]*See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 235 (Tex. 2003) ("Contracts are to be read as a whole, and an interpretation that gives effect to every part of the agreement is favored so that no provision is rendered meaningless.").

determined by the fact finder, the parties chose to stipulate to the amount of the fees in the 2010 Stipulation. The amounts listed in the 2010 Stipulation were the amounts "determined by . . . further stipulation" as called for by the 2007 Stipulation.

Paragraph three of the 2007 Stipulation, then, included the amounts stipulated in parts 2b, 2c, and 2f of the 2010 Stipulation, fees incurred after remand of the damages claim but before this appeal was taken. The trial court's decision to not award those fees likely stemmed from that court's interpretation of paragraph three of the 2007 Stipulation combined with the fact that the 2010 Stipulation did not expressly state that Warner Alan was entitled to the fees listed therein. The trial court appears to have read the 2007 Stipulation to apply only to attorney's fees that Warner Alan incurred specifically in pursuing its damages claim on remand, up through the time of the trial court's judgment awarding the damages, a reading which would result in the award ultimately made by the trial court.

But the 2007 Stipulation is not so limited, as explained below. Paragraph three states that if Warner Alan's claim for damages were to be remanded and Warner Alan prevailed on that claim, Warner Alan would be entitled to "the reasonable and necessary attorney['s] fees [Warner Alan] incur[s] on remand." It does not limit Warner Alan's entitlement to only the attorney's fees it incurred in pursuing the damages claim on remand. It does not limit Warner Alan's entitlement to only the attorney's fees it incurred in pursuing its claim up until the time of the trial court's judgment on that claim. Paragraph three states broadly that upon a remand of Warner Alan's damages claim, if Warner Alan were successful, Warner Alan

30

would be entitled to the fees it incurred on remand. The reasonable construction of this language is that it encompasses all fees Warner Alan incurred in the case after the case was remanded, including any postjudgment motions or proceedings. The claim was remanded, and Warner Alan did obtain an award on its claim, triggering application of the stipulation in paragraph three. The attorney's fees listed in categories 2b, 2c, and 2f were all fees that Warner Alan incurred after its claim was remanded to the trial court, and in paragraph three of the 2007 Stipulation, the parties agreed that Warner Alan was entitled to those fees. Accordingly, the trial court's construction of the stipulations as not providing for these fees was erroneous.

Furthermore, even if we were to hold that a stipulation to attorney's fees must expressly state that the party is entitled to the attorney's fees or words to that effect (as Paciwest argues), the 2010 Stipulation did not need to include such a statement because, as explained, the 2007 Stipulation does state that Warner Alan was entitled to the fees provided for in the 2010 Stipulation. Thus, Warner Alan's entitlement to the fees listed in 2b, 2c, and 2f of the 2010 Stipulation is established by the 2007 Stipulation.

Warner Alan also argues that it was entitled to the amount stipulated in part 2a of the 2010 Stipulation: the $110,641.36 Warner Alan incurred during its prior appeal of its damages claim. But paragraph three of the 2007 Stipulation only stipulates to Warner Alan's entitlement to the $46,723.50 in fees it had incurred up to that point and to the fees that Warner Alan "incur[s] *on remand*." [Emphasis

31

Added.] The $110,641.36 incurred in its appeal of its damages claim was not incurred "on remand" because those fees were incurred *prior* to remand, when the case was on appeal to this court. Thus, paragraph three of the 2007 Stipulation does not show any agreement between the parties that Warner Alan was entitled to those fees.

The sales contract, however, does provide for the recovery of attorney's fees.[41] The contract states,

> In the event it becomes necessary for either party hereto to file suit to enforce this Agreement or any provision contained herein, the party prevailing in such suit shall be entitled to recover, in addition to all other remedies or damages as provided herein, reasonable attorneys' fees incurred in such suit.

These fees were incurred in a suit brought by Warner Alan to enforce the sales agreement, and Warner Alan prevailed in the suit. Therefore, under the plain language of the sales contract, Warner Alan is entitled to its attorney's fees incurred in the suit. Through the 2010 Stipulation, Warner Alan established the amount and the reasonableness of the fees it incurred. Accordingly, Warner Alan is entitled to an award of the fees.

Paciwest argues that the amount of appellate attorney's fees set out in paragraph one of the 2007 Stipulation was intended by the parties to include all of

---

[41] *See Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 417–18 (Tex. App.—Corpus Christi 2001, pet. denied) (noting that parties are free to contractually agree to a more liberal standard for recovery of attorney's fees than as provided in civil practice and remedies code chapter 38); *One Call Sys., Inc. v. Houston Lighting & Power*, 936 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (same).

the attorney's fees incurred by Warner Alan in the prior appeal, both for Paciwest's appeal and for Warner Alan's cross-appeal. In support, Paciwest points to the language in paragraph one that states that Warner Alan would be entitled to the amount in paragraph one after "all appeals." Paciwest then points to the language in paragraph three that discusses the fees to which Warner Alan would be entitled if the damages claim were remanded. Paciwest says that Warner Alan's damages claim would not be remanded unless it were first appealed, and therefore the words "all appeals" in paragraph one must include the appeal of Warner Alan's damages claim. The trial court appeared to agree with Paciwest.

But as we have held, under our reading of the 2007 Stipulation, paragraph one of the 2007 Stipulation does not include fees incurred by Warner Alan with respect to its damages claim. Paragraph one applies only to Paciwest's appeal of the part of the trial court's judgment that Paciwest had breached the contract. Paragraph three applies to Warner Alan's damages claim. The 2007 Stipulation is silent regarding the fees that Warner Alan would incur in its appeal of that claim. Because the 2007 Stipulation does not address those fees, if Warner Alan wanted to recover them as provided in the sales contract, it had to establish their amount and reasonableness. As we have stated, it did so through the 2010 Stipulation. Because the parties contractually agreed that the prevailing party in a suit to enforce the sales agreement was entitled to recover its attorney's fees, and because Warner Alan established by stipulation the amount and the reasonableness of its attorney's

33

fees, the trial court should have awarded them. We sustain Warner Alan's sole issue.

Warner Alan points out in a footnote of its brief that although the 2010 stipulation provided for $30,000 in appellate attorney's fees on appeal to this court, the trial court awarded it $60,000. Warner Alan states in the footnote that this court should therefore modify the judgment not only to award it the full amount of stipulated fees, but also to delete the extra $30,000 awarded but not stipulated. We agree, and we modify the judgment accordingly.

## Conclusion

Having overruled all of Paciwest's issues, we affirm the trial court's judgment against it. Having sustained Warner Alan's sole issue, we modify the judgment to award Warner Alan an additional $231,642.98 in attorney's fees and affirm the judgment as modified.

LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED: August 16, 2012