

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00175-CV

MOTE RESOURCES, INC. AND               APPELLANTS
JOHN PHILLIP MOTE

V.

CHARLES T. GARDNER AND                APPELLEES
JANICE MARIE GARDNER

----------

## FROM THE 271ST DISTRICT COURT OF WISE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

This appeal principally concerns parties' obligations to fulfill the terms of a settlement agreement. Appellants Mote Resources, Inc. (MRI) and John Phillip Mote (Mote) appeal the final judgment that the trial court rendered in favor of appellees Charles T. Gardner and Janice Marie Gardner. We affirm in part and reverse and remand in part.

---

[1]See Tex. R. App. P. 47.4.

## Background Facts

In 1979, W.C. Yates and his wife executed an oil and gas lease on a large area of land located partly in Wise County and partly in Montague County. Mote was the lessee. The lease contained a covenant that Mote would conduct operations as a reasonably prudent operator and would develop the premises. Although some exploration occurred on the acres covered by the lease, only two wells became economically beneficial in producing minerals. Those two wells, along with eighty acres surrounding them, were "sold to Ray Richey and Company" in 1996. The remaining 400 acres remained undeveloped.

In a lawsuit prior to the dispute relating to this appeal, Donald O. Gardner and Charles T. Gardner, who had apparently acquired the land that the Yateses originally leased to Mote,[2] sued Mote, demanding that he release the 1979 lease because he had allegedly failed to conduct operations as a reasonably prudent operator with regard to exploration and development. In May 2009, Mote, individually and as president of MRI, entered into a contract (the Settlement Agreement) with the Gardners to "dispose of all issues relating to the litigation and the oil, gas[,] and mineral lease." Mote's counsel drafted the Settlement Agreement and included MRI in it because although the Gardners had not sued

---

[2]In their brief, appellees state that there is "no dispute that the Gardners are successors in interest to the [Yateses]." Appellants have not contradicted this statement, so we accept it as true. *See* Tex. R. App. P. 38.1(g).

MRI, part of the 1979 lease had been assigned from Mote to MRI. The Settlement Agreement stated, in part,

> 1. MOTE[3] shall sign a written release of any interest claimed by MOTE in the Oil, Gas and Mineral Lease filed of record . . . except for the oil well and 80 acres currently operated by Ray Richey and Company or its assigns . . . . In exchange for this release, THE GARDNERS will dismiss the suit now pending against MOTE . . . with prejudice, and shall not seek any other damages or causes of action against MOTE incident to the operation of the original lease dated March 16, 1979 by J. Phillip Mote, individually or Mote Resources, Inc.

In June 2009, Mote signed a document titled "RELEASE OF OIL AND GAS LEASE" (the Release) in which he relinquished any interest in 404.3 acres of land that an attachment to the release particularly described. Mote did not explicitly sign the Release on behalf of MRI; instead, he signed it only as "Phillip Mote." The Gardners filed the Release.

In October 2010, after the Gardners drafted and filed a motion for a nonsuit, in which they represented that they had "fully and finally settled and compromised all disputes between them and [Mote] in [that] litigation," the trial court signed an order dismissing their claims against Mote with prejudice. In the trial court's order of dismissal, the court stated that it had been "fully advised that [Mote] acknowledge[d] that [appellees were] the rightful owners of the mineral interest in question." Neither party appealed the order of dismissal.

---

[3]The Settlement Agreement defined "MOTE" as "J. PHILLIP MOTE, individually and as President of Mote Resources, Inc."

Later, the Gardners desired to re-lease their land for oil and gas exploration. Pioneer Natural Resources (Pioneer) expressed interest in developing the land and signed leases, but according to appellees, Pioneer's title attorney "required the execution of a corrected release to clear title pursuant to the terms of the Settlement Agreement. In particular, the title attorney . . . requested [that] a release be executed by" Mote in his capacity as MRI's president. Mote refused to execute another release.

In June 2011, appellees[4] sued MRI and Mote for, among other causes of action, breach of the Settlement Agreement by refusing to sign a new release upon the Gardners' request, thereby "preventing [the Gardners] from being able to lease their mineral rights." Appellees alleged that Pioneer had desired to drill on appellees' property but that Pioneer's title attorney had required the execution of a Partial Release, which stated that it would replace the June 2009 Release and that Mote, individually and as president of MRI, would relinquish all rights to approximately 400 acres that the 1979 lease covered. Appellees also sought specific performance of the Settlement Agreement and a declaration that appellants owned no interest in the property. Finally, appellees pled for attorney's fees under a provision of the Settlement Agreement.[5]

---

[4]Appellee Janice Marie Gardner sued as the independent executrix of Donald O. Gardner's estate.

[5]Paragraph seven of the Settlement Agreement stated that if either party to the agreement instigated a suit to enforce its terms, "the prevailing party in such litigation [was] entitled to all reasonable and necessary attorney fees."

4

Appellants answered appellees' suit by pleading a general denial; specially excepting to appellees' pleading;[6] alleging that appellees had breached the Settlement Agreement, therefore precluding their enforcement of it; and asserting the affirmative defenses of release (through the Settlement Agreement), res judicata (through the final judgment entered in the prior suit), waiver, and estoppel. Appellants also filed a counterclaim for declarations that they had complied with the Settlement Agreement, that the Settlement Agreement prevented appellees from litigating further claims, and that appellants had "no further obligations" to appellees.

On November 22, 2011, appellees filed a traditional motion for summary judgment concerning their requests for specific performance of the Settlement Agreement and for a declaration that appellants had no rights or claims to the property at issue. That same day, appellees gave appellants notice that a hearing had been set on the motion for December 20, 2011. In the motion, appellees contended that the Settlement Agreement had unambiguously required Mote, individually and as MRI's president, to release any claim in the 1979 lease but that Mote had only done so in his individual capacity. Thus, appellees contended that they were "entitled by contract to the release of Phillip Mote as President of [MRI]" or that they were entitled to a "declaration from [the trial court] that [appellants had] no right, title, or claim to the mineral or leasehold estate

---

[6]Appellants never obtained a ruling on their special exceptions.

5

covered by" the 1979 lease (except the eighty acres where minerals were already being produced). As evidence supporting their motion, appellees included the Settlement Agreement, the Release, an affidavit from their counsel in which he affirmed that the facts stated in the motion were within his personal knowledge and were true, and the proposed Partial Release.

Appellants did not file a response to appellees' motion for summary judgment. On December 20, 2011, the trial court granted the motion and ordered that the "only other facts material to [appellees'] claims remaining for trial" involved attorney's fees. Nonetheless, more than a month later, on January 23, 2012, appellants filed a motion for summary judgment, arguing that Mote had no obligation to execute a second release because he had fully complied with the Settlement Agreement by executing the June 2009 Release.

Two days later, appellants filed a motion for reconsideration of the trial court's decision granting appellees' summary judgment motion and a cross-motion for summary judgment. In one document that combined the motions, appellants contended that the trial court had erred by refusing to grant a continuance of the hearing on appellees' motion for summary judgment before making its ruling in December 2011 because appellants' counsel was attending an all-day hearing in another county,[7] that appellees had not established their

_____

[7]Our record does not contain a transcript from any hearing in December 2011. Although the copy of the motion for continuance that the clerk's record contains is not file stamped, a document toward the end of the clerk's record establishes that the motion for continuance was filed on December 16, 2011.

6

right to summary judgment as a matter of law, and that the affirmative defenses that appellants had pled negated appellees' claims.

Appellees responded, arguing in part that the trial court had not abused its discretion by not continuing the summary judgment hearing and that appellants' motions for summary judgment or responses to appellees' motion for summary judgment were untimely. The trial court denied appellants' motion for reconsideration without specifying its reasons for doing so. After the parties disputed the proper form for the final judgment, the trial court signed a judgment in which it found that both appellants had breached the Settlement Agreement, found that appellees were entitled to a "Declaratory [Judgment] or in the alternative specific performance and quiet title," specifically released any interest of Mote or MRI in the 1979 lease, ordered in the alternative for Mote to sign the Partial Release on behalf of himself and MRI, stated that if Mote refused to sign the Partial Release, appellees would "have and enjoy title" to the land at issue free and clear of any claims by Mote, and granted attorney's fees for appellees. Appellants brought this appeal.

## The Propriety of the Trial Court's Summary Judgment Rulings

In their first issue, appellants contend that the trial court erred by granting summary judgment for appellees because appellees failed to conclusively establish that Mote's refusal to sign the Partial Release breached the Settlement Agreement and because appellees are not entitled to a judgment that quiets title. We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315

7

S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

**Breach of the Settlement Agreement and appellees' entitlement to specific performance of the Settlement Agreement**

The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff.[8] *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.) (citing *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 825 (Tex. App.—Fort Worth 2008, no pet.)). A contract is subject to specific performance if its essential terms are expressed with such

---

[8]Appellants do not contest that the Settlement Agreement is a valid contract, that Mote and MRI were both bound to comply with it, or that appellees tendered performance under the Settlement Agreement by dismissing the original suit against Mote.

certainty and clarity that they may be understood without recourse to parol evidence. *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 571 (Tex. App.—Fort Worth 2008, pet. denied). "Specific performance is an equitable remedy that may be awarded at the trial court's discretion upon a showing of breach of contract. Specific performance is not a separate cause of action, but rather it is an equitable remedy . . . when [monetary] damages would not be adequate." *Id.* (citations omitted); *see Chevron Phillips Chem. Co. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 61 (Tex. App.—Houston [14th Dist.] 2011, pets. denied) (stating that whether to award specific performance is a matter committed to the trial court's discretion).

Although appellants state that neither party asked the trial court to interpret or construe the Release, and although appellees contend that "[o]nly the interpretation of the Settlement Agreement is at issue," to determine whether appellants breached the Settlement Agreement by not signing the Partial Release, we must first necessarily determine whether Mote's signature on the Release completely fulfilled the Settlement Agreement's terms on behalf of Mote, MRI, or both. If it did so, there was no outstanding obligation to be breached. *See Examination Mgmt. Servs., Inc. v. Kersh Risk Mgmt., Inc.*, 367 S.W.3d 835, 844 (Tex. App.—Dallas 2012, no pet.) (explaining that a "breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform").

9

Appellants contend that they fully performed under the Settlement Agreement when Mote executed the first Release in June 2009 and that by the time appellees filed this lawsuit, appellants had "no remaining contractual obligation." The Settlement Agreement is a contract, and we must therefore construe it by its plain meaning to determine the intent of the parties. *See Doe v. Tex. Ass'n of Sch. Bds., Inc.*, 283 S.W.3d 451, 458 (Tex. App.—Fort Worth 2009, pet. denied); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 848, 854–55 (Tex. App.—Houston [14th Dist.] 2001, pets. denied) (op. on reh'g). The plain language of the Settlement Agreement required "MOTE," defined as "J. PHILLIP MOTE, individually and as President of [MRI]," to sign a "written release of any interest claimed" in the lease at issue. Therefore, while appellants correctly contend (as appellees concede) that the Settlement Agreement did not require them to sign any particular document, the Settlement Agreement unambiguously required Mote to release the lease in both his individual and corporate capacities.

In their original petition in the trial court, appellees conceded that "Phillip Mote signed a release of the Oil and Gas Lease made the basis of the original petition." Although other parts of the original petition alleged that both appellants—MRI and Mote individually—had failed to comply with the Settlement Agreement, appellees conceded in their motion for summary judgment that in his individual capacity, Mote had complied with the Settlement Agreement. Specifically, in that motion, appellees stated,

10

The Settlement Agreement identifies one of the contracting parties as "J. Phillip Mote, individually and as President of Mote Resources, Inc. . . ."  J. Phillip Mote signed the Settlement Agreement, individually and as President of Mote Resources, Inc.

The Settlement Agreement requires MOTE . . . to sign a written release of any interest claimed by MOTE . . . in the Yates Lease . . . .

. . . On June 2, 2009, Phillip Mote signed that release. . . .

. . . .

[Pioneer's] title attorney has required the execution of a corrected release to clear title pursuant to the terms of the Settlement Agreement.  In particular, the title attorney has requested a release *be executed by Phillip Mote as President of Mote Resources, Inc.*

. . . .

Plaintiffs are entitled contractually to an executed release . . . from J. Phillip Mote *as President of Mote Resources, Inc.*

. . . .

. . . Phillip Mote (individually) *did execute* a Release of Oil and Gas Lease *releasing his individual claims to the Yates Lease . . . .*

. . . .

. . . *Plaintiffs have received a release from Defendant Phillip Mote but are still contractually entitled to a release from Defendant Mote Resources, Inc.*  [Emphasis added.]

We agree with appellees' concessions in their motion for summary judgment that Phillip Mote, in his individual capacity, complied with the terms of the Settlement Agreement.  The Settlement Agreement required him to sign a written release of any interest claimed in the lease filed of record in "Volume 221, Page 223 of the Deed Records of Wise County, Texas," except for eighty acres

11

operated by Ray Richey and Company. The June 2009 Release that Mote signed stated that he relinquished any interest "whatsoever" in 484.3 acres recorded in volume 221, page 223 of Wise County's records save and except eighty acres leased to Richey.[9] Thus, because appellees did not conclusively establish a claim for breach of the Settlement Agreement against Mote individually, we conclude that the trial court's judgment is erroneous to the extent that the trial court found that Mote individually breached the Settlement Agreement or that appellees are entitled to specific performance from him in his individual capacity. *See* Tex. R. Civ. P. 166a(a), (c); *Jones*, 710 S.W.2d at 60; *Rice*, 324 S.W.3d at 666. We sustain appellants' first issue to that extent.

However, we conclude that Mote did not release the lease on behalf of MRI by executing the June 2009 release because he signed it only as "Phillip Mote." *See 84 Lumber Co. v. Powers*, 393 S.W.3d 299, 304 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("To create a corporate obligation, the officer necessarily had to sign in his corporate capacity.") (citing *Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 323 (Tex. App.—El Paso 1995, writ denied) (op. on reh'g)); *Wright Group Architects-Planners, P.L.L.C. v.*

---

[9]In an early part of their brief, appellees state that Mote, acting as an individual, "signed a release releasing the Remaining Acres." Although appellees later state that both appellants breached the Settlement Agreement and that a judgment against Mote individually is proper because it "thwarts his obvious intentions to contend that the release he signed did not release his interest," our conclusion is that the June 2009 Release forever relinquished Mote's individual interest in the lease at issue and that the Release therefore complied with the Settlement Agreement as to Mote individually.

*Pierce*, 343 S.W.3d 196, 201 (Tex. App.—Dallas 2011, no pet.) ("The contract is unambiguous that Pierce signed the contract in his individual name only. We conclude that the contract shows on its face that Pierce did not sign the contract in a representative capacity . . . ."); *Mountain Corp. v. Rose*, 737 S.W.2d 22, 25 (Tex. App.—El Paso 1987, writ denied) ("Normally, one who signs without a reflection of a corporate capacity signs in an individual capacity."). Thus, we cannot agree with appellants to the extent that they argue that MRI fully performed under the Settlement Agreement by Mote's signature on the Release.[10] While Mote argues that he was not responsible for the content of the June 2009 Release that he signed, we hold that he was responsible, and remains obligated under appellees' request, to fully perform under the Settlement Agreement by releasing the lease on behalf of MRI. *See Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 216 (Tex. App.—El Paso 2010, pet. denied) (stating that an injured party in a breach of contract case may treat the contract as still in force and sue on the contract). This holding does not "threaten[] the finality of all settlement agreements" as argued by appellants; rather, it protects the utility of settlement agreements by requiring parties to fully comply with their terms.

---

[10]We note that appellants' contentions in their first issue appear to be inconsistent. Although appellants argue that the Settlement Agreement did not require Mote to sign any particular document, they nonetheless argue that Mote fulfilled the Settlement Agreement on behalf of both himself and MRI simply because he signed the particular Release that appellees presented to him.

13

Next, appellants contend that even if they breached the Settlement Agreement, appellees have not shown damages resulting from the breach because there is allegedly no evidence that the Release is insufficient to allow appellees to re-lease their minerals for exploration and development. In appellees' motion for summary judgment, however, they stated that Pioneer had requested a title opinion on appellees' land and that Pioneer's title attorney had "required the execution of a corrected release to clear title pursuant to the terms of the Settlement Agreement." Appellees attached an affidavit to the motion for summary judgment, and in the affidavit, appellees' counsel swore that the facts stated in the motion were within his personal knowledge and were true. Also, appellees attached a June 3, 2011 letter from appellees' counsel to Mote that stated that Pioneer's "attorney reviewing title . . . ha[d] required another release." We conclude that this summary judgment evidence, which appellants did not object to in the trial court,[11] establishes that appellees have been damaged by MRI's breach of the Settlement Agreement and that only specific performance of the contract can adequately remedy the damage by allowing appellees to lease

---

[11]In their reply brief, appellants contend that an affidavit that "merely adopts the allegations in a petition or a motion for summary judgment is not competent summary judgment evidence." But defects in the form of summary judgment affidavits cannot justify reversal unless the appellant objects to the defects in the trial court. Tex. R. Civ. P. 166a(f); *see also Lawrenson v. Global Marine, Inc.*, 869 S.W.2d 519, 523 (Tex. App.—Texarkana 1993, writ denied) ("[C]ounsel never complained about the fact that the affidavit attempted to incorporate facts by reference. . . . Accordingly, we hold that Lawrenson has waived any complaint about the form of the affidavit.").

14

their mineral rights. *See Rice*, 324 S.W.3d at 666*; Paciwest, Inc.*, 266 S.W.3d at 571.

For these reasons, we hold that appellees conclusively proved all essential elements of their claim that MRI breached the Settlement Agreement and that appellees are entitled to specific performance from MRI through another release signed by Mote as MRI's president. *See* Tex. R. Civ. P. 166a(a), (c); *Jones*, 710 S.W.2d at 60; *Rice*, 324 S.W.3d at 666. We overrule appellants' first issue to that extent.

**Declaratory judgment/quiet title**

In the last part of their first issue, appellants contend that the part of the judgment that declares title in favor of appellees and that specifically releases Mote's and MRI's interest in the 1979 lease is erroneous because appellees did not seek a summary judgment to declare or quiet title, because appellees did not offer any evidence or argument in support of that cause of action, and because appellees' request for a declaration that appellants had no claim in the property at issue is inconsistent with appellants' demand for Mote to sign another release.

We disagree with appellants' first contention that appellees did not seek a summary judgment to declare or quiet title. In their original petition, appellees pled a cause of action "for declaratory judgment and/or suit to quiet title" on their property. The title of appellees' motion for summary judgment stated that they were seeking summary judgment on their request for declaratory relief. And in the body of their motion for summary judgment, appellees argued that they were

15

"entitled to a declaration . . . that [appellants had] no right, title, or claim to the mineral or leasehold estate covered by the Yates Lease." Although appellants argue that no "argument, analysis, nor authority was cited in support of this single statement," grounds for summary judgment may be stated without citing argument or authority. *See, e.g.*, *Conquistador Petroleum, Inc. v. Chatham*, 899 S.W.2d 439, 442 (Tex. App.—Eastland 1995, writ denied).

We agree, however, that appellees did not attach evidence to their motion for summary judgment to establish their entitlement to a declaration that MRI had "no right, title, or claim to the mineral or leasehold estate covered by the Yates Lease." In fact, under our analysis above, the principal documents that appellees attached to their motion for summary judgment—the Settlement Agreement and the Release—affirmatively demonstrate that MRI has not released its interest in the lease despite its agreement to do so. And significantly, in their motion for summary judgment, appellees asserted that Pioneer's title attorney had "required the execution of a corrected release *to clear title.*"[12] [Emphasis added.] Thus, because appellees' motion for summary judgment and the attached evidence do not conclusively prove all essential elements of appellees' declaratory judgment/quiet title claim against MRI, we hold that the trial court erred by

---

[12]Similarly, in their original petition, appellees represented that appellants' execution of a new release was necessary to "fully effectuate title." We note that the Settlement Agreement referred to the release of appellants' interests in the lease in future terms rather than affirmatively stating that the interests had been released.

granting summary judgment on that claim as to MRI, and we sustain appellants' first issue to that extent. *See* Tex. R. Civ. P. 166a(a), (c); *Jones*, 710 S.W.2d at 60; *Clark v. Cotten Schmidt, L.L.P.*, 327 S.W.3d 765, 769 (Tex. App.—Fort Worth 2010, no pet.); *see also Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied) ("The elements of the cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable.").

Under our analysis above, however, we conclude that as to Mote individually, the Settlement Agreement and Release conclusively proved that Mote's interest in the lease has been terminated. Also, appellees' summary judgment motion and the evidence attached to it establish appellees' interest in the property at issue. Thus, we conclude that the trial court did not err by granting summary judgment on appellees' declaratory judgment/quiet title claim as to Mote individually. *See Jones*, 710 S.W.2d at 60; *Vernon*, 390 S.W.3d at 61; *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (op. on reh'g) ("The plaintiff must prove, as a matter of law, that he has a right of ownership and that the adverse claim is a cloud on the title that equity will remove."). We overrule appellants' first issue to that extent.

**Denial of Continuance**

In their second issue, appellants argue that the trial court abused its discretion by denying their motion for a continuance of the hearing on appellees' motion for summary judgment. Appellants attached a motion for continuance to their January 2012 motion for reconsideration. Although the attached motion is not file-stamped, it contains verification and service dates of December 16, 2011. In the motion, appellants alleged that on December 20, 2011, the day set by the trial court for hearing appellees' motion for summary judgment, appellants' counsel had an all-day hearing set in another court. The motion established that at the time appellees' motion for summary judgment was set for a hearing, appellants' attorney knew of the conflict but believed that the other case would settle.

Brandy Manning, who now appears as appellate counsel for appellants but was not their counsel in the trial court, signed an affidavit that appellants attached to their motion for reconsideration. In Manning's affidavit, she stated that she had attended the December 20, 2011 hearing on appellees' motion for summary judgment as a "favor to counsel of record, who was set for trial in Tarrant County at the same time." Manning stated that on that day, she informed the trial court that appellants' counsel was in trial, that the trial court "acknowledged that the Motion for Continuance was filed and could be heard," and that the trial court decided to hear and decide appellees' motion for summary

18

judgment rather than appellants' motion for continuance.[13]  Appellants' trial counsel also filed an affidavit in which he stated that he was attending a trial in Tarrant County at the time of the summary judgment hearing in the trial court; that at the time the summary judgment hearing was set, he believed that the Tarrant County matter was going to settle; and that while he was in Tarrant County on the date of the summary judgment hearing in Wise County, he was informed that the trial court called the Tarrant County court to confirm that he was in that court.

When reviewing a trial court's denial of a motion for continuance, we consider whether the trial court abused its sound discretion.  *See Allen v. United of Omaha Life Ins. Co.*, 236 S.W.3d 315, 326 (Tex. App.—Fort Worth 2007, pet. denied); *Karen Corp. v. The Burlington N. & Santa Fe Ry. Co.*, 107 S.W.3d 118, 124 (Tex. App.—Fort Worth 2003, pet. denied).  "Absent a showing that the trial court acted arbitrarily and unreasonably, we will not disturb its decision on appeal."  *Karen Corp.*, 107 S.W.3d at 124.

Continuances shall not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law."  Tex. R. Civ. P. 251.  In general, absence of counsel is not good cause for a continuance, but the

---

[13]We conclude, therefore, that the trial court implicitly overruled appellants' motion for continuance.  *See* Tex. R. App. P. 33.1(a)(2)(A); *Stauder v. Nichols*, No. 01-08-00773-CV, 2010 WL 2306385, at *5 (Tex. App.—Houston [1st Dist.] June 10, 2010, no pet.) (mem. op.) ("[B]y proceeding to submission of the motion for summary judgment as scheduled, the trial court necessarily implicitly denied appellants' request for a continuance.").

trial court has the discretion to allow a continuance if good cause is shown. Tex. R. Civ. P. 253; *R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 701 (Tex. App.—Waco 2008, pet. denied). In determining whether the trial court abused its discretion by denying a motion for continuance, we may consider the "procedural backdrop" of the case in the trial court. *See Green v. Cook*, No. 02-08-00087-CV, 2009 WL 279384, at *7 (Tex. App.—Fort Worth Feb. 5, 2009, no pet.) (mem. op.).

Appellants' motion for continuance and the affidavits that appellants filed with their motion for reconsideration collectively demonstrate that appellants' trial counsel knew of his conflicting setting from the date he received notice of the summary judgment hearing but that he waited until four days before the summary judgment hearing to file the motion for continuance and waited until the day of the summary judgment hearing to present the motion to the trial court. Also, neither the motion nor the affidavits establish that counsel sought alternative counsel to represent appellants in the event that his Tarrant County case did not settle as he had expected. And neither the motion nor the affidavits provide facts showing that counsel's belief that the Tarrant County case would settle before December 20 (thus allowing counsel to attend the summary judgment hearing in the trial court) was objectively reasonable.

20

Finally, because appellants had not responded to appellees' motion for summary judgment,[14] the trial court likely knew that even if counsel had appeared for the hearing, he would have been limited to arguing that appellees' summary judgment evidence was insufficient to prove appellees' claims as a matter of law, which was a matter that the trial court was already obligated to consider. *See Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 957 (Tex. App.—Dallas 2013, no pet.); *Baker v. John Peter Smith Hosp., Inc.*, 803 S.W.2d 454, 457 (Tex. App.—Fort Worth 1991, writ denied). Here, appellees' summary judgment evidence was uncomplicated, comprising only the Settlement Agreement, the Release, a short affidavit from appellees' attorney, and a letter from appellees' attorney to Mote. And because of the nature of summary judgment hearings, even if counsel had appeared at the hearing, appellants could not have contradicted any of that evidence or added to it. *See* Tex. R. Civ. P. 166a(c); *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex. 1998). We also note that the record does not contain a transcript from the summary judgment hearing, so it is impossible to determine whether the trial court considered argument at the hearing by appellees' counsel or simply ruled on the motion based on its contents.

---

[14]The motion for continuance asked the trial court only to reset the hearing on appellees' summary judgment motion; it did not ask the trial court for an extension of time for appellants to respond to the summary judgment motion.

Considering all of these circumstances, we cannot conclude that the trial court abused its discretion by denying appellants' motion for continuance of the summary judgment hearing. *See Karen Corp.*, 107 S.W.3d at 124; *see also Murphree v. Cooper*, No. 14-11-00416-CV, 2012 WL 2312706, at *3 (Tex. App.—Houston [14th Dist.] June 19, 2012, no pet.) (mem. op.) (concluding that a trial court did not abuse its discretion by denying a motion for continuance based on counsel's conflicting settings when counsel filed the motion soon before trial, the motion failed to state why steps were not taken earlier to avoid the conflict, and the record did not establish whether the appellant attempted to resolve the conflict immediately upon becoming aware of it); *Reyna v. Reyna*, 738 S.W.2d 772, 775 (Tex. App.—Austin 1987, no writ) (holding the same when, among other facts, the movant had not sought substitute counsel); *Van Sickle v. Stroud*, 467 S.W.2d 509, 511 (Tex. Civ. App.—Fort Worth 1971, no writ) ("The cases holding that absence of counsel is grounds for a continuance uniformly require a showing of diligence and lack of fault by the complaining party."). The cases cited by appellants are inapposite to the facts in this appeal. *See, e.g.*, *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986) (holding that a trial court abused its discretion by denying a motion for continuance when a party's attorney withdrew two days before trial, which was "too short a time" for the party to find a new attorney); *Stone v. Navarro*, No. 05-95-00755-CV, 1996 WL 272922, at *2–3 (Tex. App.—Dallas May 17, 1996, no writ) (not designated for publication) (concluding that a trial court abused its discretion by overruling a motion for continuance when the

22

court knew at the time it set a hearing that counsel had a conflict); *Two Republics Oil & Gas Co. v. Reiser*, 247 S.W. 910, 910–11 (Tex. Civ. App.—San Antonio 1923, no writ) (holding that a continuance could have been warranted when a party discovered that its counsel was too sick to attend trial one day before the trial began). We overrule appellants' second issue.

### Appellants' Affirmative Defenses

In their third issue, appellants contend that they conclusively established their right to summary judgment based on the affirmative defenses that they raised in their motion for reconsideration and cross-motion for summary judgment, which they filed after the trial court had granted appellees' motion for summary judgment. Specifically, appellants argue that the doctrines of release, res judicata, waiver, and estoppel preclude appellees' claims.

We have explained that the "issues determined on a motion for summary judgment are final, although the judgment is interlocutory. After an interlocutory summary judgment is granted, the issues it decides cannot be litigated further unless the trial court sets the judgment aside or the summary judgment is reversed on appeal." *Martin v. First Republic Bank, Fort Worth, N.S.*, 799 S.W.2d 482, 488–89 (Tex. App.—Fort Worth 1990, writ denied) (citation omitted); *see Trevino & Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 144 (Tex. App.—Dallas 2013, no pet.) (stating the same). When the trial court does not vacate an interlocutory summary judgment, we "look at the propriety of the summary judgment based upon the facts and written responses before the court

23

at the time the judgment was entered." *Linder v. Valero Transmission Co.*, 736 S.W.2d 807, 810 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.); *see Circle X Land & Cattle Co. v. Mumford Indep. Sch. Dist.*, 325 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (op. on reh'g) ("[W]hen a motion for reconsideration or new trial is filed after a summary-judgment motion is heard and ruled upon, the trial court may ordinarily consider only the record as it existed before hearing the motion the first time."); *St. Clair-Urdaneta, Inc. v. Marathon Oil Co.*, No. 05-96-00434-CV, 1999 WL 72202, at *5 (Tex. App.—Dallas Feb. 12, 1999, pet. denied) (not designated for publication). This rule requires the party opposing a partial, interlocutory summary judgment to raise issues that could preclude the summary judgment during the original summary judgment proceeding or risk that those issues will not be considered later. *See Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343, 350 (Tex. App.—Texarkana 1998, no pet.).

The issue of whether appellees were entitled to specific performance on their breach of contract claim had already been determined through an interlocutory summary judgment at the time appellees filed their motion for reconsideration and cross-motion for summary judgment. The trial court did not set aside its interlocutory order granting appellees' motion for summary judgment. Thus, under our precedent, we conclude that the trial court did not err by denying appellants' motion for reconsideration and cross-motion for summary judgment. *See Crumpton v. Stevens*, 936 S.W.2d 473, 477 (Tex. App.—Fort

24

Worth 1996, no writ); *Martin*, 799 S.W.2d at 488–89; *see also Methodist Hosps. of Dallas v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 883 (Tex. App.—Dallas 1991, writ denied) ("Once the trial court granted CCI summary judgment as to liability, no obligation existed for it to consider further motions on that issue from either party."); *Chapman v. Mitsui Eng'g & Shipbuilding Co.*, 781 S.W.2d 312, 315 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (explaining that a trial court does not abuse its discretion in refusing to consider summary judgment materials filed after the summary judgment hearing). For the same reason, we reject appellants' argument on appeal that appellees' acceptance of performance in the first suit—their dismissal of the suit after receiving the Release—precludes their contract claim in the second suit. This argument was not before the trial court at the time the trial court granted appellees' motion for summary judgment, and the trial court was therefore not obligated to consider it. *See Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 307 n.3 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (op. on reh'g) ("New arguments to defeat summary judgment presented after the trial court has granted summary judgment do not warrant reversal."). We overrule appellants' third issue.[15]

---

[15]Moreover, for the reasons stated in appellees' brief, we conclude that the trial court would not have erred by denying appellants' motion for reconsideration and cross-motion for summary judgment on the merits of the affirmative defenses raised by appellants. The Settlement Agreement precluded only further claims that were "incident to the operation of the original lease dated March 16, 1979," not claims for breach of the Settlement Agreement. Also, appellees' nonsuit of the original lawsuit against appellants did not preclude appellees from suing MRI for a breach of the Settlement Agreement that occurred after the nonsuit by

## The Relief Granted Within the Judgment

In their fourth issue, appellants contend that the trial court's judgment must be reversed because it grants relief that appellees did not request, includes relief against Mote individually when appellees pled only that MRI had breached the Settlement Agreement, and violates rule of civil procedure 301 by granting alternative relief.

Rule of civil procedure 301 states in part,

> The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. . . . Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law.

Tex. R. Civ. P. 301. Appellants argue that the trial court's judgment violates rule 301 by granting alternative relief. The judgment states in part,

> This Court finds that [appellants] breached the [Settlement Agreement] and that [appellees] are entitled to Declaratory Judgment or in the alternative specific performance and quiet title.
>
> IT IS THEREFORE ORDERED AND DECLARED that the oil, gas and mineral lease . . . is hereby released by [appellants] as to all of the lands covered by said . . . lease, except for the acreage described with particularity on Exhibit "A" attached hereto and incorporated herein by reference.
>
> IN THE ALTERNATIVE, IT IS ORDERED that [appellants] sign the release attached hereto as exhibit "A".
>
> In the event that [appellants] refuse to sign the release attached hereto . . .[,] IT IS ORDERED that [appellees] have and enjoy title to the lands and property described in aforesaid . . . lease

---

Mote's refusal to sign a release of interest in the lease on behalf of MRI. *See Compania Financiara Libano, S.A. v. Simmons*, 53 S.W.3d 365, 367 (Tex. 2001).

. . ., FREE AND CLEAR of any claims made or purported to be made by [appellants].

Appellants contend that this judgment "cannot be ministerially enforced" because it depends on appellees making a choice between remedies. But appellants did not raise this complaint in the trial court. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g); *see also Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) ("Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties."); *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex.) (stating that fundamental error is a mostly "discredited doctrine" that has been employed in rare instances, such as when the trial court lacked jurisdiction), *cert. denied*, 541 U.S. 945 (2004).

Our sister courts have held that complaints about violations of rule of civil procedure 301, including complaints about violations of the one final judgment rule, are subject to waiver under rule of appellate procedure 33.1 through a party's failure to object. *See Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 92–93 (Tex. App.—San Antonio 2011, no pet.); *Malekzadeh v. Malekzadeh*, Nos. 14-05-00113-CV, 14-06-00341-CV, 2007 WL 1892233, at *2

(Tex. App.—Houston [14th Dist.] July 3, 2007, pet. denied) (mem. op.). Appellants have not directed us to authority establishing that a violation of the one final judgment rule is fundamental error that may be raised for the first time on appeal. Thus, we hold that appellants waived their complaint under rule 301 by failing to raise it in the trial court, and we overrule the part of appellants' fourth issue that concerns alleged violations of rule 301. *See* Tex. R. App. P. 33.1(a).

Appellants also succinctly argue in their fourth issue that appellees are not entitled to attorney's fees because they "failed to carry their summary judgment on their breach of contract claim." Because we have held that the trial court properly granted summary judgment to appellees on that claim as to MRI, we overrule appellants' argument about appellees' attorney's fees to the extent that the judgment requires MRI to pay them.

But we have held that judgment against Phillip Mote individually was improper on appellees' contractual claim. Although appellees contend on appeal that the award of attorney's fees can be alternatively supported by their declaratory judgment claim,[16] appellees pled for attorney's fees only under the language in the Settlement Agreement, not under chapter 37 of the civil practice and remedies code. Specifically, appellees pled in part that they were entitled to recover reasonable and necessary attorney's fees "under the provisions of . . . Paragraph 7 of the [Settlement Agreement]." We have not found any contention

---

[16]*See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008).

by appellees in the trial court that they were entitled to attorney's fees under chapter 37 in association with prosecuting their declaratory judgment claim or defending against appellants' counterclaim.[17] Thus, because appellees relied only on the language of the Settlement Agreement for the award of attorney's fees and because we have held that Mote individually did not breach the Settlement Agreement, we hold that the part of the judgment requiring Mote to pay the attorney's fees is erroneous. *See Nat'l City Mortg. Co. v. Adams*, 310 S.W.3d 139, 143 n.4 (Tex. App.—Fort Worth 2010, no pet.) (op. on reh'g) ("Because NCM pleaded only contractual indemnity for its attorneys' fees, it is not entitled to an award of attorneys' fees under the Loan Agreement's reimbursement provision."); *see also Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, Nos. 14-11-00976-CV, 14-11-00980-CV, 2013 WL 5323983, at *13 (Tex. App.—Houston [14th Dist.] Sept. 24, 2013, no pet. h.) ("[W]hen a party pleads a specific ground for recovery of attorney's fees, the party is limited to that ground and cannot recover attorney's fees on another, unpleaded ground."). We sustain appellants' fourth issue to that extent.

---

[17]We also note that while appellees' pleading asked for a declaration that involved the "interpretation and enforcement" of the Settlement Agreement, the only declaration that they sought in their motion for summary judgment was that appellants had no "right, title, or claim to the mineral or leasehold estate covered by the Yates Lease." The trial court's declaration in its judgment did not expressly refer to the Settlement Agreement but instead stated that the lease had been released by appellants.

Finally, appellants contend that judgment against Mote individually is improper because appellees conceded in their pleadings that in his individual capacity, Mote executed a valid release and because appellees "have not alleged that Phillip Mote individually . . . failed to comply" with the Settlement Agreement. Based on our analysis above, we agree that judgment against Mote individually was improper as to appellees' contractual claim, and we sustain that part of appellants' fourth issue.

**Conclusion**

Having overruled appellants' first and fourth issues in part and all of appellants' second and third issues, we affirm the trial court's judgment to the extent that it finds that MRI breached the Settlement Agreement, grants appellees the remedy of specific performance of the Settlement Agreement as to MRI, declares the lease at issue released as to Mote individually, quiets title as to any claim by Mote individually, and awards appellees' attorney's fees against MRI. But having sustained appellants' first and fourth issues in part, we reverse the trial court's judgment to the extent that it finds that Mote individually breached the Settlement Agreement, grants appellees the remedy of specific performance of the Settlement Agreement as to Mote individually, declares the lease released as to MRI, quiets title as to any claim by MRI, and awards appellees attorney's fees against Mote individually.

On the parts of appellants' first and fourth issues that we have sustained, we remand, rather than render, because we have held that the trial court did not

30

err by denying appellants' motion for reconsideration and cross-motion for summary judgment and because the trial court was never presented with or ruled on appellants' January 23, 2012 motion for summary judgment, which they filed after the trial court granted summary judgment for appellees. *See Vansteen Marine Supply, Inc. v. Twin City Fire Ins. Co.*, 93 S.W.3d 516, 521 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 315 (Tex. App.—Fort Worth 2001, no pet.) (citing *Taylor-Made Hose, Inc. v. Wilkerson*, 21 S.W.3d 484, 488–89 (Tex. App.—San Antonio 2000, pet. denied) (en banc)). We remand this case to the trial court for further proceedings consistent with this opinion because the claims for declaratory judgment/quiet title as to MRI and breach of contract/specific performance as to Mote remain pending. *See* Tex. R. App. P. 43.2(a), (d).

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DELIVERED: November 14, 2013